## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AD1 Urban Palm Bay, LLC, *et al.*, | Case No. 23-10074 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | **Ref. Docket Nos. 15, 38, 76, 104, 134, & 139** |

### FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (II) MODIFYING AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] [Docket No. 15] of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m), for entry of this final order (including the Budget, as defined herein) (this "Final Order"), *inter alia*:

   (i)   authorizing the Debtors' use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), subject to the terms of this Final Order;

   (ii)   granting, subject to the Carve-Out (as defined below) adequate protection to the Secured Parties (as defined below) to protect against any Diminution in Value (as defined below) of their respective Prepetition Liens (as defined below) in the Prepetition Collateral (including Cash Collateral);

   (iii)   approving the Milestones (as defined below) as set forth in this Final Order;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: AD1 Celebration Hotels, LLC (7980); AD1 Daytona Hotels, LLC (7940); AD1 LBV1, LLC (1125); AD1 PB Airport Hotels, LLC (6855); AD1 SW Property Holdings, LLC (2507); AD1 Urban Palm Bay, LLC (3713); AD1 Urban Palm Bay Place, LLC (2385); AD1 Celebration Holdings, LLC (3363); AD1 Daytona Holdings, LLC (2761); AD1 LBV Hotels, LLC (7709); AD1 Palm Beach Airport Hotels, LLC (2187); AD1 Urban Strategy Palm Bay, LLC (9412); and AD1 Urban SW, LLC (6934). The mailing address for each of the Debtors is 1955 Harrison Street, Suite 200, Hollywood, FL 33020.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(iv)    vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of this Final Order; and

(v)    granting related relief, all as more fully set forth in the Motion;

and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and notice of the Motion having been given in accordance with the Local Rules; and no other or further notice of the Motion being required; and the Court having jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having determined it may enter a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the relief requested in the Motion and provided for herein being in the best interest of the Debtors, their estates, and creditors; and after due deliberation and good and sufficient cause appearing therefor, and upon the record made at the interim hearing held on January 26, 2023 (the "Interim Hearing") and the final hearing on the Motion held on February 28, 2023 (the "Final Hearing");

**BASED UPON THE RECORD ESTABLISHED BY THE DEBTORS AT THE INTERIM HEARING AND FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]**

A.    _Disposition_.    The relief requested in the Motion is granted on a final basis in accordance with the terms of this Final Order. Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits. This Final Order shall

---

[3] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

become effective immediately upon its entry and any applicable stay (including under Bankruptcy Rule 6004) is waived to permit such effectiveness.

B.    _Petition Date_.  On January 22, 2023, each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court commencing these Chapter 11 Cases.

C.    _Debtors-in-Possession_.    The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Debtors agree to operate in the ordinary course of business consistent with the Budget.  No trustee or examiner has been appointed in these Chapter 11 Cases.

D.    _Jurisdiction and Venue_.    The Court has jurisdiction over this matter, these proceedings, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference_ from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue for these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    _Committee_.  As of the date hereof, no statutory committee has been appointed in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

F.    _Debtors' Stipulations_.  The Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows:

> (i)    _Prepetition Loan_. Debtors AD1 LBV1, LLC; AD1 Celebration Hotels, LLC; AD1 Daytona Hotels, LLC; AD1 PB Airport Hotels, LLC; AD1 SW Property Holdings, LLC; AD1 Urban Palm Pay Place, LLC; and AD1 Urban Palm Bay, LLC (the "Borrower Debtors") are parties to that certain

3

Loan Agreement dated as of December 10, 2021, by and among the Borrower Debtors, HPS Investment Partners, LLC, in its capacity as administrative agent and collateral agent (in such capacities, together with its successors and permitted assigns, "Agent"), and the lenders party thereto from time to time (the "Lenders" and together with the Agent, the "Secured Parties"), as amended by that First Amendment to Loan Agreement dated as of June 30, 2022 by and among the Borrower Debtors, the Agent, and non-Debtor guarantors Jose Daniel Berman, Alex Fridzon, Arie Fridzon, and AD1 Management, Inc. (together, the "Prepetition Loan"). The Secured Parties are not insiders of the Debtors.

(ii)     *Prepetition Collateral.* In connection with entry into the Prepetition Loan, each of the Borrower Debtors executed certain other documents related thereto (collectively, with the Guaranties (as defined herein) and the Loan Agreement, the "Loan Documents") pursuant to which the Agent, for the benefit of itself and the Lenders, has a valid, binding, enforceable, non-avoidable and properly perfected security interest (the "Prepetition Liens") in certain of the Debtors' assets including Debtors' cash (the "Prepetition Collateral") and no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature exist as to the Prepetition Liens, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, reduction or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)    *Guaranties.* In connection with the Prepetition Loan, Debtors AD1 LBV Hotels, LLC; AD1 Celebration Holdings, LLC; AD1 Daytona Holdings, LLC; AD1 Palm Beach Airport Hotels, LLC; AD1 Urban Strategy Palm Bay, LLC; and AD1 Urban SW, LLC (collectively, the "Guarantors") each executed a Pledge Agreement and Pledgor Guaranty dated as of December 10, 2021 (collectively, the "Guaranties") pursuant to which Guaranties each Guarantor pledged its respective limited liability company membership interests in the Borrowers as additional collateral for the loan.

(iv)    *Prepetition Loan Obligations.* As of the Petition Date, the outstanding principal amount under and in connection with the Loan Documents is approximately $165,000,000, plus accrued and accruing interest, charges, fees, costs, and expenses (including attorneys' fees and legal expenses) plus any and all other amounts required to be paid under and in connection with the Loan Documents (collectively, the "Prepetition Loan Obligations"), which amounts constitute legal, valid, binding, enforceable, and non-avoidable obligations and no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature exist as to the Prepetition Loan Obligations, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, reduction or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

4

(v)     *Cash Collateral*. All or substantially all of the Debtors' cash and cash equivalents, including cash on deposit in any account or accounts as of the Petition Date, securities or other property, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Secured Parties.

G.      *Adequate Protection*.  Section 363(c)(2) of the Bankruptcy Code provides that a debtor-in-possession may not use Cash Collateral unless: (1) each entity with an interest in such Cash Collateral consents; or (2) the court, after notice and hearing, authorizes the use, sale, or lease of such Cash Collateral in accordance with the provisions of Section 363 of the Bankruptcy Code. *See* 11 U.S.C. § 363 (c)(2).  To protect their asserted interests in the Prepetition Collateral, the Secured Parties are entitled to receive adequate protection for any diminution in value of their interests in the Prepetition Collateral from and after the Petition Date resulting from, among other things, the use of Cash Collateral, the use, sale, lease, consumption, or disposition of Prepetition Collateral, or the imposition of the automatic stay (collectively, the "Diminution in Value") pursuant to sections 361, 362, and 363 of the Bankruptcy Code.  Pursuant to sections 361, 363, 503(b), and 507(b) of the Bankruptcy Code, as adequate protection, the Agent, on behalf of itself and for the benefit of the Lenders, shall receive, subject to the Carve-Out (as defined below) the (i) Adequate Protection Liens (as defined below); (ii) the Adequate Protection Superpriority Claim (as defined below); (iii) the Adequate Protection Payments (as defined below); (iv) the payment of Fees and Expenses (as defined below); and (v) Access to Records.  The Agent, on behalf of itself and the Lenders, is consenting to the use of Cash Collateral solely based on the Debtors' agreement to the terms and conditions for the use of Cash Collateral set forth in this Final Order. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral from and after

US.356047946.02

the Petition Date.  Subject to the Carve-Out (as defined below) and upon a showing of good cause, the Secured Parties' rights are reserved to seek additional adequate protection beyond the adequate protection provided in this Final Order.

H.     *Sections 506(c) and 552(b)*.  In light of the Secured Parties' agreement to permit the use of the Cash Collateral as and to the extent set forth herein, the Agent, on behalf of itself and the Lenders, shall receive (a) a waiver of any "equities of the case" claims or exceptions under section 552(b) of the Bankruptcy Code and (b) a waiver of the provisions of section 506(c) of the Bankruptcy Code.

I.     *Necessity of Relief Requested*.  The ability of the Debtors to finance their operations during the pendency of these Chapter 11 Cases requires continued use of Cash Collateral.  In the absence of the use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible and immediate and irreparable harm to the Debtors, their estates, and their creditors would occur. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business or to maintain their property without the use of Cash Collateral. The relief requested in the Motion is therefore necessary for the continued operation of the Debtors' businesses and the preservation of their properties.  Entry of this Final Order is in the best interests of the Debtors and their estates, and is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and the Debtors' estates, stakeholders, assets, goodwill, and reputation.

J.     *Good Cause Shown; Best Interest*.  Absent entry of this Final Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and entry of this Final Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow

US.356047946.02

for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful reorganization.

K.    _Notice_. In accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Rules, notice of the Final Hearing, the Final Order and the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties-in-interest, including: (i) the Office of the United States Trustee; (ii) the entities appearing on the Debtors' list of thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the Agent; (iv) the Office of the United States Attorney; (v) the Attorney General for the State of Delaware; (vi) the Internal Revenue Service; (vii) the Delaware Secretary of State, and (viii) all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim in the Prepetition Collateral, and (ix) those persons who have formally appeared in these Chapter 11 Cases and requested service pursuant to Bankruptcy Rule 2002. Notice of the Motion, the Final Order and the Final Hearing constitutes due, sufficient and appropriate notice and complies with the Bankruptcy Code, Bankruptcy Rules and Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    _Motion Granted_. The Motion is **GRANTED** on a final basis as set forth herein. The use of Cash Collateral on a final basis is authorized, subject to the terms and conditions of this Final Order, including the Budget.

2.      <u>Objections Overruled</u>.  All objections to the Motion to the extent not withdrawn or resolved are overruled.  Notwithstanding any applicability of any Bankruptcy Rules or Local Rules, this Final Order shall become effective immediately upon its entry.

3.      <u>Authorization to Use Cash Collateral</u>.  Subject to and solely in accordance with the terms and conditions of this Final Order, the Debtors are authorized to use Cash Collateral, solely in accordance with the Budget, until the earlier of (a) October 15, 2023 (unless such date is extended by the written consent of the Agent) or (b) five (5) business days after receipt of written notice of an Event of Default (as defined below) (the "<u>Specified Period</u>").  Notwithstanding anything to the contrary in this Final Order, other than as expressly permitted in this Final Order or in accordance with the Budget, the Debtors are not authorized to use any portion of the Reserves without further order of the Court or the written consent of the Agent.  The Debtors' authority to use Cash Collateral shall automatically terminate immediately upon expiration of the Specified Period, without further notice or order of this Court (and the automatic stay shall automatically be deemed lifted to implement the forgoing), unless otherwise extended by written agreement of the Debtors and the Agent.

4.      <u>Use of Collateral</u>. Subject to and solely in accordance with the terms and conditions of this Final Order, Cash Collateral may only be used during the Specified Period for working capital, general corporate purposes, such items identified in the Budget, and to pay costs associated with the Debtors' restructuring, in each case, for the purposes identified in the Budget, and otherwise in accordance with this Final Order.

5.      <u>Use of CapEx Funds</u>.  Subject to and solely in accordance with the terms and conditions of this Final Order, the Debtors shall have access to all funds in the Reserve allocated for use on capital expenditures as of the date of this Final Order (the "<u>CapEx Reserve</u>") and shall

US.356047946.02

be entitled to use $100,000 per month through June 30, 2023 for use at all Properties (collectively, the "CapEx Funds"), including specifically renovation of the Crowne Plaza (as defined below), but excluding use on the Daytona (also as defined below) following approval of the use of such funds by construction consultant Mark G. Anderson Consultants, Inc. and Fulcrum Hospitality, LLC. Notwithstanding the foregoing, CapEx Funds may be used for the Daytona exclusively in an emergency situation where failure to take immediate action will either present an imminent risk of damage to the surrounding properties or the environment or result in significant diminution in Daytona's value, as agreed by the Debtors and Agent.

6.    Hurricane Insurance Proceeds.  The Debtors shall have the immediate ability to utilize insurance proceeds ("Hurricane Insurance Proceeds") received by the Debtors specifically related to damage as a result of Hurricanes Ian or Nicole for the needed repairs and remediation at properties suffering damage from Hurricanes Ian or Nicole following approval of proposed repairs and remediation work by construction consultant Mark G. Anderson Consultants, Inc. For the avoidance of doubt and subject to the terms of this Final Order, the Debtors are authorized to use the Hurricane Insurance Proceeds regardless of whether these proceeds or the repairs and remediation are included in the Budget.

7.    Franchise Fees and Expenses.  Notwithstanding anything hereto, the Debtors shall continue to pay in full on a monthly basis and in the ordinary course all post-petition franchise fees, royalties, and reimbursable expenses (the "Franchisor Fees and Expenses") due to (a) Holiday Hospitality Franchising, LLC ("HHF") pursuant to (i) that certain Crowne Plaza Conversion License Agreement dated September 21, 2017 (as may have been amended) [Loc. #6012] between HHF, as licensor, and AD1 LBV1, LLC, as licensee, (ii) that certain Crowne Plaza® Hotels Change of Ownership/Brand Change License Agreement dated June 10, 2019 (as may have been

US.356047946.02

amended) [Loc. #3719] between HHF, as licensor, and AD1 PB Airport Hotels, LLC, as licensee, and (iii) that certain Staybridge Suites Hotel Conversion License Agreement dated August 22, 2017 (as may have been amended) [Loc. #19458] between HHF, as licensor, and AD1 Celebration Hotels, LLC, as licensee (collectively, the "HHF Agreements"); (b) Marriott International Inc. ("Marriott") pursuant to that (i) certain Aloft Hotel Franchise Agreement dated August 31, 2017 and (ii) Element by Westin Franchise Agreement dated August 31, 2017 (as may have been amended or assigned, and including any related documents associated therewith) between Marriott, as franchisor, and AD1 SW Property Holdings, LLC, as franchisee (together, the "Marriott Agreements"); (c) Hilton Franchise Holding LLC ("Hilton") pursuant to (i) that certain Franchise Agreement dated May 21, 2018 (as may have been amended) between Hilton, as franchisor, and AD1 Daytona Hotels, LLC, as franchisee, and (ii) that certain Franchise Agreement dated August 14, 2017 (as may have been amended) between Hilton, as franchisor, and AD1 Urban Palm Bay, LLC, as franchisee (together, the "Hilton Agreements"); and (d) Hyatt Place Franchising, L.L.C. ("Hyatt") pursuant to that certain Franchise Agreement dated December 5, 2017( as may have been amended) between Hyatt, as franchisor, and AD1 Urban Palm Bay Place, LLC, as franchisee (the "Hyatt Agreement," and collectively with the HHF Agreements, the Marriott Agreement, and the Hilton Agreements, the "Franchise Agreements").  Notwithstanding anything set forth elsewhere in this Final Order or the Budget (and the variances set forth therein), the payment of any Franchisor Fees and Expenses in accordance with the terms of the Franchise Agreements shall not constitute an Event of Default and the Debtors' rights under section 365 of the Bankruptcy Code vis-à-vis the Franchise Agreements shall not be affected.

8.      Adequate Protection.  Subject to the Challenge Deadline (as defined below) and the Carve-Out (as defined below), the Secured Parties are entitled, pursuant to sections 361 and 363(e)

US.356047946.02

of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral (including Cash Collateral) (such adequate protection as set forth in clauses (a)-(f) below, the "Adequate Protection Offerings") in the form of the following:

      (a)      Adequate Protection Liens.

    (1)    As adequate protection of the interests of the Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests from and after the Petition Date, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors shall grant, and as of entry of the Final Order are hereby deemed to have granted, to the Agent, on behalf of itself and for the benefit of the Lenders, replacement security interests and liens on any and all of the Debtors' and their estates' property, whether now owned or in existence on the Petition Date or thereafter acquired or existing and wherever located (the "Postpetition Collateral" together with the Prepetition Collateral and Cash Collateral, the "Collateral"), to the same extent, scope, priority, validity and enforceability that the Secured Parties' prepetition security interests and liens had with respect to the Cash Collateral that is used by the Debtors (the "Adequate Protection Liens"), but without requiring any additional filing or recordation of statements or documents. Subject to the Carve-Out (as defined below), the Adequate Protection Liens shall attach to any proceeds or property recovered in connection with the pursuit of claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "Avoidance Actions").

    (2)    Subject to the Carve-Out (as defined below), the Adequate Protection Liens shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings in which any of the Debtors is or has been named as a debtor or alleged debtor or superseding or related to any of the foregoing (collectively, "Successor Cases"). The Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and the Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 510(b) or (c), 549, or 550 of the Bankruptcy Code and the Adequate Protection Liens shall not be subject to section 506(c) of the Bankruptcy Code. The Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and automatically perfected liens, not subject to subordination, impairment, or avoidance, for all purposes in the Chapter 11 Cases and any Successor Cases. No lien or

11

interest avoided and preserved for the benefit of any of the Debtors' estates pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

(b)   <u>Adequate Protection Superpriority Claims</u>. To the extent of any Diminution in Value of the interests of the Secured Parties in the Prepetition Collateral, the Debtors shall grant, and as of entry of the Final Order are hereby deemed to have granted, to the Agent, on behalf of itself and for the benefit of the Lenders, an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Cases against each of the Debtors and their estates pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claim</u>"), which Adequate Protection Superpriority Claim, subject to the Carve-Out (as defined below), shall be payable from any and all prepetition and postpetition property of the Debtors and the proceeds thereof. The Adequate Protection Superpriority Claim shall be an allowed claim against the Debtors (jointly and severally) with priority over any all administrative expenses and all other claims against the Debtors now existing or hereinafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specific in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or nonconsensual lien, levy or attachment. Subject to the Carve-Out, the Adequate Protection Superpriority Claim shall attach to any proceeds or property recovered in connection with any Avoidance Actions.

(c)   <u>Adequate Protection Payments</u>. As further adequate protection, the Debtors are authorized and directed to pay to the Agent, on behalf of itself and for the benefit of the Lenders, adequate protection payments on the last business day of each calendar month following entry of the Final Order in the amounts set forth in the Budget, each such adequate protection payment shall be paid in cash and shall be applied against the then outstanding accrued and unpaid interest.

(d)   <u>Fees and Expenses</u>. The Debtors are hereby authorized and directed to pay all outstanding prepetition and all postpetition reasonable and documented out-of-pocket fees (including any transaction or completion fees) and expenses (the "<u>Fees and Expenses</u>") of (i) Paul Hastings LLP, as counsel to the Agent; (ii) The Rosner Law Group LLC, as local Delaware bankruptcy counsel to the Agent; (iii) Bilzin Sumberg Baena Price & Axelrod LLP, as local Florida counsel to the Agent; and (iv) such other legal, consulting, financial, and/or other professional advisors as may be retained or may have been retained from time to time by the Agent. The current payments to be made by the Debtors on account of such Fees and Expenses shall be limited to the amounts provided for this purpose in the Budget; <u>provided</u> that, for

12

the avoidance of doubt, the Secured Parties' claim on account of the Fees and Expenses shall not be capped by the amounts provided for in the Budget.

(e)    <u>Access to Records</u>.  In addition to, and without limiting, whatever rights to access the Secured Parties have under the Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit the professional advisors of the Agent (i) to have reasonable access to the Debtors' properties and other Collateral of any Debtor for the purposes of inspection, (ii) to examine the Debtors' books and records, (iii) to conduct reasonable financial due diligence, and (iv) to have reasonable access to, and to discuss the Debtors' affairs, finances, and condition with, the Debtors' senior officers, professionals, and financial advisors, in each case excluding (a) all privileged and attorney-client work product, (b) trade secrets, and (c) information that the Debtors are otherwise prohibited from disclosing pursuant to a third-party confidentiality agreement. The Debtors, including their senior management team, to the extent reasonably available, and financial advisors, shall conduct a telephonic conference call, at least once a week, with professionals for the Agent, in order to discuss the Budget, any variance or related reports delivered in connection therewith, the financial condition and business affairs of the Debtors and the status of the Chapter 11 Cases.

(f)    <u>Right to Seek Additional Adequate Protection</u>. This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Secured Parties to request further or alternative forms of adequate protection or the rights of the Debtors or any other party to contest such request. Nothing contained herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in connection with any request for additional adequate protection by any party.

Nothing contained in this Final Order shall be deemed a finding by the Court, or an acknowledgment by the Secured Parties, that the adequate protection granted herein does or does not in fact adequately protect the Secured Parties against any Diminution in Value of its interests in the Prepetition Collateral (including the Cash Collateral).  The Agent, on behalf of itself and for the benefit of the Lenders, is only consenting to the use of Cash Collateral based on the Debtors' agreement to the terms and conditions for the use of Cash Collateral set forth in this Final Order.

9.    <u>Adequate Protection Fees and Expenses</u>.   The payment of all reasonable and documented fees and expenses provided for herein as adequate protection shall not be subject to

any fee application process in the Chapter 11 Cases, and all invoices therefor may be in summary form only (and may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, counsel to the Committee (if any), and the U.S. Trustee (the "Fee Notice Parties"); provided, however, that if no formal objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten calendar days after delivery of such invoices (the "Fee Objection Period"), then, upon the expiration of the Fee Objection Period, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any event, within 5 business days after expiration of the Fee Objection Period. If a formal objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until such objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors. Subject to the Challenge Deadline, none of the adequate protection payments required to be made pursuant to this Final Order shall be subject to counterclaim, setoff, subordination, recharacterization, defense, avoidance or disgorgement in the Chapter 11 Cases or any Successor Cases.

10.    Group Properties Milestones.  It shall be an Event of Default (as defined below) if the Debtors fail to achieve any of the following milestones as they relate to those properties appearing on Exhibit 2 hereto (each a "Group Property" and collectively, the "Group Properties") (as the same may be extended with consent of the Agent; the "Group Properties Milestones"):

(a)    By no later than March 3, 2023, the Debtors shall have filed retention application(s) for a broker or brokers, the identity of whom shall at all times be acceptable to the Agent (the "Broker"), to assist the Debtors with the marketing process to refinance and/or sell substantially all of their assets (the "Refi/Sale Process")[4];

(b)    By no later than March 13, 2023, the Debtors and the Broker shall begin advertising the Group Properties for the Refi/Sale Process;

(c)    By no later than March 14, 2023, the Debtors shall have filed a bid procedures motion for the Properties (the "Bid Procedures Motion"), and the Broker shall have commenced, the Refi/Sale Process as to all Group Properties;

(d)    By no later than March 20, 2023, the Debtors and the Broker shall begin formally marketing the Group Properties;

(e)    By no later than April 21, 2023, the Debtors may designate bidders to act as "stalking horse bidders" for any Group Properties to be sold ("Sale Group Properties") provided (1) Agent has provided consent to the stalking horse bid, such consent not to be unreasonably withheld and (2) the minimum stalking horse bids meet or exceed each Sale Group Properties' designated "release price," as shall be set forth in more detail in the Bid Procedures Motion;

(f)    By no later than May 3, 2023, the deadline for (1) the submission of final qualified bids in connection with the Refi/Sale Process for the Group Properties shall have occurred; and (2) provided no stalking horse bidder had yet been designated, Agent shall have declared whether it will serve as stalking horse bidder (which stalking horse bid(s), for the avoidance of doubt, would not need to meet or exceed each Sale Group Properties' designated "release price") (Agent would not seek a break-up fee or expense reimbursement if acting as stalking horse bidder);

(g)    By no later than May 9, 2023, the Refi/Sale Process auctions for all Group Properties shall have occurred, and the Debtors shall have selected the winning bidder(s);

(h)    By no later than May 12, 2023, the Debtors will seek approval of the winning and back-up bidders from the Court (the "Sale Hearing"). As will

---

[4] The Debtors shall not be permitted to refinance any of the Properties, whether under the Refi/Sale Process or otherwise, unless either (i) the Secured Parties provide consent thereto or (ii) the proceeds received by HPS from (A) such proposed refinancing plus (B) the sale or refinancing of all other Properties are sufficient to pay the Secured Parties' allowed claim in full.

US.356047946.02

be detailed in the Bid Procedures Motion, the Debtors may elect to conduct separate Sale Hearings for the Group Properties; and

(i)     By the earlier of July 31, 2023 or such time as all pre-closing conditions have been met, all sales with Sale Hearings having occurred on or before May 12, 2023 shall have closed.  In limited circumstances and only for good cause as determined by the Debtors and the prospective purchaser and subject to Agent's approval, a Sale Hearing may occur up to July 31, 2023— though such earlier deadlines will not be amended.

11.     Crowne Plaza Milestones.  It shall be an Event of Default if the Debtors fail to achieve any of the following milestones as they relate to the property owned by Debtor AD1 PB Airport Hotels, LLC known as the "Holiday Inn Palm Beach Airport-Crowne Plaza" and located at 1301 Belvedere Rd., West Palm Beach, FL 33405 ("Crowne Plaza") (as the same may be extended with consent of the Agent; the "Crowne Plaza Properties Milestones"):

(a)     By the earlier of (1) the completion of the work necessary to complete the conversion of the Crowne Plaza or (2) May 8, 2023, the Debtors and the Broker shall begin advertising the Crowne Plaza for the Refi/Sale Process;

(b)     By no later than May 12, 2023, the Debtors and the Broker shall begin formally marketing the Crowne Plaza;

(c)     By no later than June 21, 2023, the Debtors may designate a bidder to act as "stalking horse bidder" for Crowne Plaza provided (1) Agent has provided consent to the stalking horse bid, such consent not to be unreasonably withheld and (2) the minimum stalking horse bid meets or exceeds Crowne Plaza's designated "release price," as shall be set forth in more detail in the Bid Procedures Motion;

(d)     By no later than June 28, 2023, the deadline for (1) the submission of final qualified bids in connection with the Refi/Sale Process for the Crowne Plaza shall have occurred; and (2) provided no stalking horse bidder had yet been designated, Agent shall have declared whether it will serve as stalking horse bidder for the Crowne Plaza (which stalking horse bid, for the avoidance of doubt, would not need to meet or exceed Crowne Plaza's designated "release price") (Agent would not seek a break-up fee or expense reimbursement if acting as stalking horse bidder);

(e)     By no later than July 12, 2023, the Refi/Sale Process auction for the Crowne Plaza shall have occurred, and the Debtors shall have selected the winning bidder for the Crowne Plaza;

16

(f)    By no later than July 17, 2023, the Debtors will seek approval of the winning and back-up bidders from the Court for the Crowne Plaza (the "Crowne Plaza Sale Hearing"); and

(g)    By the earlier of August 30, 2023 or such time as all pre-closing conditions have been met, the Crowne Plaza sale shall have closed.

12.    Daytona Milestones.  It shall be an Event of Default if the Debtors fail to achieve any of the following milestones as they relate to the property owned by Debtor AD1 Daytona Hotels, LLC known as the "Rushhh Tapestry by Hilton" and located at 2323 South Atlantic Avenue, Daytona Beach Shores, FL 32118 ("Daytona") (as the same may be extended with consent of the Agent; the "Crowne Plaza Properties Milestones," and collectively with the Group Properties Milestones and the Crowne Plaza Milestones, the "Milestones"):

(a)    By no later than June 8, 2023, the Debtors and the Broker shall begin advertising the Daytona for the Refi/Sale Process;

(b)    By no later than June 12, 2023, the Debtors and the Broker shall begin formally marketing the Daytona;

(c)    By no later than July 21, 2023, the Debtors may designate a bidder to act as "stalking horse bidder" for the Daytona provided (1) Agent has provided consent to the stalking horse bid, such consent not to be unreasonably withheld and (2) the minimum stalking horse bid meets or exceeds the Daytona's designated "release price," as shall be set forth in more detail in the Bid Procedures Motion;

(d)    By no later than July 28, 2023, the deadline for (1) the submission of final qualified bids in connection with the Refi/Sale Process for the Daytona shall have occurred; and (2) provided no stalking horse bidder had yet been designated, Agent shall have declared whether it will serve as stalking horse bidder for the Daytona (which stalking horse bid, for the avoidance of doubt, would not need to meet or exceed the Daytona's designated "release price") (Agent would not seek a break-up fee or expense reimbursement if acting as stalking horse bidder);

(e)    By no later than August 4, 2023, the Refi/Sale Process auction for the Daytona shall have occurred, and the Debtors shall have selected the winning bidder for the Daytona;

US.356047946.02

(f)    By no later than August 8, 2023, the Debtors will seek approval of the winning and back-up bidders for the Daytona from the Court (the "Daytona Sale Hearing"); and

(g)    By the earlier of September 29, 2023 or such time as all pre-closing conditions have been met, the Daytona sale shall have closed.

13.    <u>Right to Credit Bid</u>. Subject to section 363(k) and the Challenge Deadline, the Secured Parties or its designee(s) shall have the right to credit bid all or any portion of the Collateral up to the full amount of the Prepetition Loan Obligations in the sale of any of the Debtors' assets, whether in a sale under or pursuant to section 363 of the Bankruptcy Code, a Chapter 11 plan subject to confirmation under section 1129(b)(2)(A) of the Bankruptcy Code, a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code, or otherwise. The Agent shall have the absolute right to assign, transfer, sell, or otherwise dispose of its rights to credit bid (subject to this Final Order) to any acquisition vehicle formed in connection with such bid or other designee.

14.    <u>Secured Parties' Claim</u>.  Subject to the Challenge Deadline, the Secured Parties' claim on account of the Prepetition Loan shall be an allowed claim against the Debtors for all purposes in an amount equal to the sum of (a) the outstanding principal amount of the Prepetition Loan, (b) any outstanding pre- and post-petition interest at the Default Rate, (c) the Minimum Interest Payment, (d) the Exit Fee plus (e) the reasonable fees, costs, and expenses (including attorneys' fees and legal expenses) of the Secured Parties; *provided* that (i) if there is at no time an Event of Default under this Final Order, then the Secured Parties' allowed claim against the Debtors on account of the Prepetition Loan shall be reduced by an amount equal to the amount of Minimum Interest Payment that would otherwise be due and owing for the period after September 30, 2023, and (ii) the Debtors' right to object to the inclusion of interest at the Default Rate (but not at the non-default Interest Rate) as part of the Secured Parties' allowed claim, and the Secured

18

Parties' right to respond to any such objection, are fully preserved.[5]  The Debtors shall pay to the Agent, for the benefit of the Secured Parties, at the time of closing of each sale or refinancing of a Property all proceeds received by them from the sale or refinancing of such Property up to the amount of the Secured Parties' allowed claim.

15.  <u>Carve Out</u>.

(a)  The Adequate Protection Offerings shall be subject to the payment of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under sections 156(c) and 1930(a) of title 28 of the United State Code (plus any applicable interest at the statutory rate), (ii) prior to the delivery (by email or otherwise) by the Secured Parties of a written notice to the Debtors, the Debtors' counsel, and the U.S. Trustee, of the occurrence and continuance of an Event of Default (the "<u>Carve-Out Notice</u>"), the unpaid fees, costs and expenses accrued or incurred by any person or firm retained by the Debtors (collectively, the "<u>Professionals</u>") and payable under sections 328, 330 and/or 331 of the Bankruptcy Code, to the extent allowed by an order of this Court (whether allowed prior to or after the delivery of the Carve-Out Notice) in an aggregate amount on a line item basis not exceeding the budgeted amounts for such unpaid professional fees and disbursements as reflected in the Budget in effect immediately prior to the Carve-Out Notice; (iii) following the delivery of the Carve-Out Notice, an aggregate amount not to exceed the lesser of (1) the amount of such unpaid Professionals' fees and disbursements accrued or incurred prior to the Carve-Out Notice and (2) the budgeted amount of Professional fees and disbursements set forth in such Budget (other than Transaction Payments (as defined below)) through the date of the delivery of the Carve-Out Notice, but only to the extent not previously disbursed in accordance with the Budget, plus, in each case $200,000; (iv) fees of the Broker earned in conjunction with the consummation of a transaction or transactions as part of the Refi/Sale Process and as set forth in its respective engagement letter(s) with the applicable Debtors, provided that such amounts may be paid out of the collateral of the Secured Parties only to the extent such fees were (1) actually earned pursuant to the terms of the respective engagement letters with the Debtors, (2) approved by the Bankruptcy Court, and (3) earned in connection with transactions consented to by the Secured Parties, or, to the extent such transaction occurs in connection with a plan of reorganization, the class of creditors consisting exclusively of the Secured Parties has voted to accept the treatment provided in such plan (collectively, all such fees are

_____

[5] Each capitalized term used in this Paragraph 14 but not defined in this Final Order has the meaning in the Prepetition Loan.

US.356047946.02

referred to as the "Transaction Payments"); and (v) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $35,000 (collectively, the "Carve-Out"); provided, however, that the Carve-Out shall be subject to Paragraph 22 of this Final Order. The Carve-Out Notice shall also constitute a demand to the Debtors as of such date to utilize all cash (including Cash Collateral) on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Carve-Out (other than the amount of the Transaction Payments, which shall be paid directly and solely out of the proceeds of the applicable transaction). So long as a Carve-Out Notice has not been delivered: (x) the Debtors shall be permitted to pay administrative expenses allowed and payable under sections 328, 330, and/or 331 of the Bankruptcy Code, as the same may become due and payable, and (y) such payments shall not be applied to reduce the Carve-Out (to the extent such payments are ultimately allowed by the Court); provided, however, that following a Carve-Out Notice any amounts actually paid to Professionals on account of post-Carve-Out Notice fees and disbursements by any means will reduce the Carve-Out on a dollar-for-dollar basis. Notwithstanding the foregoing, nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, the Secured Parties, the U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts incurred or requested.

(b)    Notwithstanding anything to the contrary herein, the Carve-Out shall be senior to the Adequate Protection Offerings and all other liens and claims granted under this Final Order, or otherwise securing or in respect of the Adequate Protection Offerings.

(c)    The Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals, the U.S. Trustee, or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any successor case, and nothing in the Interim Order, this Final Order, or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

16.    Modification of Automatic Stay.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claim; and (b) permit the Debtors to

US.356047946.02

perform such acts as may be necessary to assure the perfection and priority of the liens granted herein.

17.    <u>Grant and Perfection of Adequate Protection Liens</u>. Subject to the Carve-Out and the Challenge Deadline, this Final Order shall be sufficient and conclusive evidence of the granting, creation, attachment, validity, perfection, enforceability, and priority of the Adequate Protection Liens without requiring any additional filing or recordation of statements or documents. Notwithstanding the foregoing, the Agent is authorized to file, as it deems advisable, such financing statements, mortgages, notices of liens, and other instruments or documents to perfect in accordance with applicable nonbankruptcy law or to otherwise evidence the applicable Adequate Protection Liens and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, evidence, or perfect the Adequate Protection Liens or to entitle the Secured Parties to the priority granted herein. The Debtors are authorized and directed to execute and deliver to the Agent promptly after written demand all such financing statements, mortgages, notices, instruments, and other documents as the Agent may reasonably request.

18.    <u>Budget</u>.

(a)    Not later than 5:00 p.m. Eastern time every Thursday occurring after the entry of this Final Order and thereafter (commencing with Wednesday of the calendar week immediately after the entry of this Final Order) (the "<u>Budget Reporting Deadline</u>")), the Debtors shall deliver to the Agent a supplement to the Budget then in effect (each, a "<u>Budget Supplement</u>"), covering the period commencing with Monday of the calendar week immediately preceding such Budget Reporting Deadline through and including the 13 week period thereafter, the form, scope and level

of detail of which Budget Supplement shall be consistent with the Budget then in effect, and which Budget Supplement shall be otherwise in form and substance satisfactory to the Agent in its sole discretion (as confirmed and approved in writing (including via email) by the Agent) and, following the fourth week after entry of this final order and following every four week period thereafter, the Debtors may deliver a reforecasted Budget (each a "Budget Reforecast")  which may include updated assumptions from those made in the prior Budget (each Budget Supplement and Budget Reforecast, if, but solely if, approved in accordance with the foregoing, an "Updated Budget").  For the avoidance of doubt, no Updated Budget shall become the Budget unless and until approved by the Agent (which approval shall be deemed granted upon receipt by the Debtors or its counsel of written notice (which may be via email) of such consent from the Agent or its counsel on its behalf) (such approval or consent in accordance with the foregoing, the "Agent's Consent"), and in the event that such Updated Budget is not so approved by the Agent, the prior Budget shall remain in effect; provided, however, that the Agent shall not have any obligation to approve any Budget Supplement or any Updated Budget, and, no modification to any Updated Budget or any Budget, or any reforecasting of any information relating to any period covered by any other Updated Budget or any Budget, as the case may be, shall in any event be effective without Agent's Consent.

(b)    Not later than 5:00 p.m. Eastern time every Thursday (commencing on the second Thursday after the entry of this Final Order) (each such Thursday, a "Variance Report Deadline"), and on each Thursday thereafter, the Debtors shall deliver to the Agent, a variance report, in each case, in form, scope and detail satisfactory to the Agent (each such report, a "Variance Report") showing the difference, on a line-item basis, between (a)(i) actual receipts for the immediately preceding two calendar week period and cumulative since the Petition Date (the "Applicable

Period") and (ii) budgeted receipts for the Applicable Period (as set forth in the Budget in effect for such Applicable Period) (each line-item variance, a "Receipts Variance") and (b)(i) actual disbursements for the Applicable Period and (ii) budgeted disbursements for the Applicable Period (as set forth in the Budget in effect for such Applicable Period) (each line-item variance, a "Disbursements Variance"), and the available cash on hand for the end of such week, in each case, for the prior two weeks, together with a reasonably detailed explanation of such Receipts Variance and Disbursements Variance.

(c)     The Debtors shall arrange for a weekly teleconference with the Agent to take place at 3:00 p.m. Eastern time (or at such other time as is reasonably satisfactory to the Agent) on Monday (commencing with Monday, March 6,2023 (or such other day as is reasonably satisfactory to the Agent)), which teleconference shall (i) require, at the election of the Agent, participation by at least one senior officer of Debtors' management team and/or professional advisors to the Debtors and (ii) be intended for purposes of discussing Debtors' financials (including any budget proposed to be the Budget, Variance Reports and any projections) and such other information and matters reasonably related thereto or requested by the Agent; provided, that such teleconference shall not be required in any week if and to the extent that the Agent shall have previously waived or postponed the same by written notice to the Debtors.

19.     The Debtors shall not permit (i) for the rolling four-week period ending on any Variance Report Deadline beginning with the fourth Variance Report Deadline, the Debtors' actual disbursements (in the aggregate for the prior four weeks) to be more than 10% of the projected operating disbursements (in the aggregate for all operating disbursements included in the four prior weeks in the Budget) as set forth in the Budget with respect to such period and four prior weeks in the Budget (a variance of 10% or less, a "Permitted Disbursements Variance"); and (ii) for the

US.356047946.02

rolling four-week period ending on any Variance Report Deadline beginning with the fourth Variance Report Deadline, the Debtors' actual receipts (in the aggregate for the prior four weeks)) to be less than 85%[6] of the projected receipts (in the aggregate for all receipts included in the four prior weeks in the Budget) as set forth in the Budget with respect to such rolling four-week period (a variance of 15%[7] or more, a "<u>Permitted Receipts Variance</u>," and each of a Permitted Receipts Variance and a Permitted Disbursements Variance, a "<u>Permitted Variance</u>"; all references herein to "<u>Budget</u>" shall mean the Budget as approved by the Agent as it is subject to Permitted Variances) (<u>provided</u> that a breach of the Permitted Receipts Variance test shall not constitute an Event of Default until the earlier of (x) the resolution of the cash management issues preventing the Debtors from reliably measuring the Permitted Receipts Variance, and (y) March 10, 2023).

20.    <u>Events of Default</u>. The occurrence and continuance of any of the following events, unless waived in writing by the Agent, shall constitute an event of default (each individually, an "<u>Event of Default</u>"):

(a)    the closing of a sale of a material portion of the assets of the Debtors, excluding the sales of the Properties pursuant to the Refi/Sale Process and according to the Milestones;

(b)    the effective date of a plan of reorganization;

(c)    the entry of any order appointing a trustee or examiner with expanded powers in the Chapter 11 Cases;

(d)    the entry of an order converting or dismissing the Chapter 11 Cases;

(e)    the failure by the Debtors to perform, in any material respect, any of the terms, provisions, conditions, covenants or obligations under this Final

---

[6] Where one or more of the Properties is impacted by an acute significant weather event (an "<u>Acute Weather Event</u>") that results in atypical cancellations at the affected Property or Properties, actual receipts (in the aggregate for the prior four weeks that includes such Acute Weather Event)) are permitted to be no less than 75% of the projected receipts (in the aggregate for all receipts included in the four prior weeks in the Budget) as set forth in the Budget with respect to such rolling four-week period.

[7] Where a period is impacted by an Acute Weather Event, the Permitted Receipts Variance for such period shall be increased to 25%.

US.356047946.02

Order, including the failure by the Debtors to meet any of the Milestones or to comply with the Budget provisions;

(f)    any portion of this Final Order ceases to be in full force and effect, including without limitation, pursuant to any reversal, staying, vacatur, revocation, amendment, or modification (without the Agent's consent) of this Final Order;

(g)    the obtaining after the Petition Date of indebtedness for borrowed money that is secured by a security interest, mortgage, or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage, or other lien of the Secured Parties;

(h)    the obtaining on or after the Petition Date of indebtedness for borrowed money, or guaranties in respect thereof, without the prior written consent of the Agent, in its reasonable discretion, other than up to $150,000 in the ordinary course of business;

(i)    any Debtor allows, incurs, or creates any postpetition lien or security interest, other than those (i) granted pursuant to this Final Order, (ii) consented to by the Agent, (iii) junior to the Adequate Protection Liens and the Prepetition Liens, or (iv) securing less than an aggregate of $150,000 of claims (as defined in the Bankruptcy Code) at any time outstanding, incurred in the ordinary course of business;

(j)    other than with respect to the Carve-Out, any Debtor allows, incurs, or creates any claim entitled to administrative status which is equal or senior to the Adequate Protection Superpriority Claim granted to the Agent, on behalf of itself and for the benefit of the Lenders, herein;

(k)    the entry of an order by the Court, other than this Final Order, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral;

(l)    the entry of an order by the Court modifying or granting relief from the automatic stay with respect to any Collateral or assets of any Debtor which has an aggregate value in excess of $150,000;

(m)    the (i) entry of a judgment or order by this Court or any other court modifying, limiting, subordinating, recharacterizing, or avoiding the validity, enforceability, perfection, or priority of any of the Debtors' obligations under this Final Order, the Prepetition Loan Obligations, the Prepetition Liens, any obligations under the Loan Documents, the Adequate Protection Liens, the Adequate Protection Superpriority Claim, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (ii) the entry of a judgment or order by this Court or any other court (x) imposing, surcharging

US.356047946.02

or assessing against the Secured Parties' claims, the Collateral, any costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise, or (y) impairing the Secured Parties' rights in any respect to credit bid (subject to section 363(k)); or (iii) the Debtors commence, join, or assist in any such proceeding, challenge, objection, defense, claim, or counterclaim of any kind or nature against the Secured Parties or that seeks relief that is inconsistent or contrary in any respect to any of the Debtors' Stipulations or any of the Debtors' other acknowledgements and stipulations contained herein;

(n)    the entry of an order by this Court or any other Court avoiding, recharacterizing, subordinating, or requiring repayment of any portion of any payment made pursuant to the terms of this Final Order, or terminating any Adequate Protection Payments; or

(o)    the termination or modification of the exclusive right of the Debtors to file and/or solicit acceptances of a plan of reorganization under section 1121 of the Bankruptcy Code.

21.    <u>Rights and Remedies Upon Event of Default</u>.

(a)    Upon the occurrence of an Event of Default, the Debtors shall promptly (but in no event later than two (2) business days following the occurrence of such Event of Default) provide notice in writing of the occurrence of any Event of Default (a "<u>Default Notice</u>") to the Agent, and counsel to the Agent, with a copy to the U.S. Trustee, and the Agent may send a termination notice (a "<u>Termination Notice</u>") of the Agent's intention to declare a termination, reduction, or restriction of the Debtors' ability to use Cash Collateral to the Debtors, with a copy to the U.S. Trustee, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order. Absent consent by the Agent, the Debtors' right to use Cash Collateral pursuant to this Final Order shall terminate without further notice or court proceeding on the earlier of delivery of (i) a Default Notice; or (ii) a Termination Notice, unless such Event of Default is cured by the Debtors or waived by the Agent within five (5) business days (or such later date as may be agreed to in

26

writing by the Agent) (the "Default Notice Period") following delivery of such Default Notice or Agent's Termination Notice, as applicable.

(b)    Unless the Court determines otherwise during the Default Notice Period, upon the expiration of the Default Notice Period, the Debtors shall no longer have the right to use or seek to use Cash Collateral, the automatic stay shall automatically be terminated without further notice or order and the Secured Parties shall be permitted to (i) declare all accrued adequate protection payment obligations to be immediately due and payable, and/or (ii) take any other actions or exercise any other remedies set forth herein or in the Loan Documents or as otherwise available at law (subject, in each case, and in all respects, to the terms of this Final Order), against the Collateral, in each case, without further action, notice, or order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens on and security interest in the Collateral or any other rights and remedies granted to the Secured Parties with respect thereto pursuant to the Loan Documents, this Final Order or applicable law, rule or regulation, as applicable. Furthermore, the delay or failure to exercise rights and remedies under this Final Order or the Loan Documents shall not constitute a waiver of the Secured Parties' respective rights hereunder, thereunder, or otherwise.

22.    Limitations on Use of Collateral.  Notwithstanding anything herein to the contrary, no portion or proceeds of the Prepetition Collateral, Postpetition Collateral and Cash Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors, but excluding any Committee subject to an agreed budget for Investigation in this Final Order, in connection with any of the following: (i) the investigation (including by way of examinations or discovery proceedings), initiation, assertion, joining, commencement, support

or prosecution of any claims, counter-claims, causes of action, adversary proceedings, applications, motions, objections, defenses, or other contested matters against the Secured Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, and employees, past, present and future, and their respective heirs, predecessors, successors and assigns, in each case in their respective capacities as such and with respect to any transaction, occurrence, omission, action or other matter related to any Debtor (including formal discovery proceedings in anticipation thereof), including, without limitation, (a) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Loan Obligations or the Prepetition Liens, (b) investigating or asserting any claims or causes of action arising under chapter 5 of the Bankruptcy Code against the Secured Parties, (c) investigating or asserting any so-called "lender liability" claims and causes of action against the Secured Parties; and (d) investigating or asserting any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Loan Obligations; (ii) the assertion of any claims or causes of action against the Secured Parties, including, without limitation, claims or actions to hinder or delay the assertions, enforcement or realization on the liens securing the Prepetition Loan Obligations in accordance with this Final Order (including attempting to stay the exercise of any right or remedy described in this Final Order); (iii) seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the Secured Parties hereunder or under the Loan Documents, in each of the foregoing cases without such applicable parties' prior written consent; (iv) the payment of any amount on account of any claims arising prior to the Petition Date

US.356047946.02

unless such payments are approved by order of the Court; or (v) any purpose that is prohibited under the Bankruptcy Code (collectively, "Investigation").

23.    Section 506(c) Claims. No costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against any Secured Parties or any of the Prepetition Loan Obligations or the Prepetition Collateral and Postpetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the Secured Parties upon the Prepetition Collateral, as applicable, without the prior express written consent of the Agent in its sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors.

24.    No Liability to Third Parties. To the extent of use of Cash Collateral, the Secured Parties (a) shall not have any liability to any third party and shall not be deemed to be in control of the operations of any Debtors or to be acting as a "controlling person," "responsible person," "owner or operator," or "participant" with respect to the operation or management of any Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute or regulation), and (b) shall not owe any fiduciary duty to the Debtors, their creditors, or their estates or shall be deemed to constitute a joint venture or partnership with any of the Debtors.

25.    Reservation of Certain Committee and Third Party Rights and Bar of Challenges and Claims.

(a)    The admissions, stipulations, agreements, releases, and waivers set forth in Paragraph F above of this Final Order (collectively, the "Prepetition Lien and Claim Matters") are

US.356047946.02

and shall be binding on the Debtors in all circumstances and for all purposes. The admissions, stipulations, agreements, releases, and waivers set forth in Paragraph F above shall be binding on any subsequent trustee (including any chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, any Committee, in all circumstances and for all purposes, unless, and solely to the extent that, a party-in-interest with standing and requisite authority, (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the Prepetition Lien and Claim Matters, including, without limitation, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Loan Documents, the Prepetition Loan Obligations or the Prepetition Liens, (B) alleging any basis to impair, restrict, limit, deny or otherwise challenge the right of the Agent to credit bid, in whole or in part, the Prepetition Liens, or the Prepetition Loan Obligations, under section 363(k) of the Bankruptcy Code or otherwise or (C) otherwise asserting or prosecuting any claim or cause of action, including any action for preferences, fraudulent transfers or conveyances, recharacterization, subordination, disgorgement, offset, objections, contests, defenses, or other challenges against the Secured Parties or any of its former, current, and future officers, directors, employees, shareholders, stockholders, equity holders, owners, members, managers, partners, principals, subsidiaries, affiliates, funds or managed accounts, agents, advisors, attorneys, accountants, investment bankers, consultants, other professionals and representatives, together with the respective successors and assigns thereof, in each case, in their respective capacities as such (the "Representatives") arising under, in connection with, or related to the Loan Documents,

the Prepetition Loan Obligations, the Prepetition Liens, or the Prepetition Collateral (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by seventy-five (75) days from entry of the Interim Order for any party in interest (the "Challenge Deadline"), as such applicable date may be extended in writing from time to time by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; provided, however, that as to the Debtors, any and all such Challenges are hereby irrevocably waived and relinquished; provided, further, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such Challenge or claim and any Challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred; provided, further, that any motion filed with the Court seeking requisite standing and authority to pursue a Challenge must include a draft complaint attached thereto.  For the avoidance of doubt, any chapter 7 trustee appointed before the Challenge Deadline shall be deemed to be a non-debtor party and shall not be bound by the admissions, stipulations, agreements, releases, and waivers set forth in Paragraph F above until 30 days after his/her appointment.

(b)    If no such Challenge is timely and properly filed during the Challenge Period or if the Court rules against the plaintiff in any such proceeding (and such ruling becomes final and non-appealable) then: (a) the admissions, stipulations, agreements, releases, and waivers set forth in Paragraph F shall be binding on all parties in interest, including, without limitation, any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party in interest, whether acting or seeking to act on behalf of the Debtors' estates or

US.356047946.02

otherwise, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases, (b) the Prepetition Loan Obligations shall constitute allowed claims, the Loan Documents shall be deemed valid and enforceable, and the Prepetition Liens shall be deemed to be legal, valid, binding, continuing, perfected, and enforceable, in each case, against each of the Debtors in the Chapter 11 Cases and any Successor Cases, and (c) the Prepetition Loan Obligations, the Prepetition Liens, and the Loan Documents shall not be subject to any other or further claim, cause of action, or Challenge, whether arising under the Bankruptcy Code or otherwise, by any Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party in interest, whether acting or seeking to act on behalf of the Debtors' estates or otherwise, including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases, against the Secured Parties or their Representatives (in each case, in their respective capacities as such) arising under, in connection with, or relating to the Loan Documents, the Prepetition Liens, or the Prepetition Loan Obligations, and each such claim, cause of action or Challenge shall be deemed forever waived, released and barred. If any such Challenge is timely filed during the Challenge Period, the admissions, stipulations, agreements, releases, and waivers set forth in Paragraph F shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any Committee, and on any other person or entity, except to the extent that such admissions, stipulations, agreements, releases, and waivers set forth in Paragraph F were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of court of competent jurisdiction. Nothing in the Interim Order or this Final Order vests or confers on any Person (as defined in the Bankruptcy Code) or any other person or entity, standing or authority to pursue any

US.356047946.02

claim or cause of action belonging to the Debtors or their estates and all rights to object to such standing are expressly reserved.

26.    <u>No Marshaling</u>. Neither the Secured Parties nor the Prepetition Loan Obligations shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Postpetition Collateral, as the case may be, and proceeds thereof shall be received and applied in accordance with this Final Order notwithstanding any other agreement or provision to the contrary.

27.    <u>Section 552(b)</u>. The Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and neither the Debtors nor any of their creditors or equity holders nor any other person or entity shall have any right to seek to apply the "equities of the case" exception under section 552(b) of the Bankruptcy Code to the Secured Parties, Prepetition Loan Obligations and the Prepetition Collateral.

28.    <u>Insurance</u>.    The Debtors shall maintain adequate insurance coverage on the Prepetition Collateral and the Postpetition Collateral, including, but not limited to, as may be required under the Loan Documents, or any loan document, note, agreement, letter agreement, security agreement, guarantee, or other documents executed by the Debtor in favor of the Secured Parties.

29.    <u>Cash Management</u>. The Debtors shall maintain a cash management system consistent with the *Final Order (I) Granting (I) Authority to (A) Continue Using Existing Bank Accounts, Business Forms, Cash Management System, and Pay All Fees Related Thereto And (B) Implement Ordinary Course Changes to Cash Management System, Including Opening and Closing Bank Accounts; and (II) Related Relief*.

US.356047946.02

30.    <u>Recharacterization</u>. In the event that it is determined by a final order, which order shall not be subject to any appeal, stay, reversal or vacateur, that the Secured Parties are not entitled to the Adequate Protection Payments or the Fees and Expenses as adequate protection for the Diminution in Value of their interests in the Prepetition Collateral, and the Secured Parties are determined to be under-secured, then, pursuant to a further final order, such Adequate Protection Payments and Fees and Expenses shall be applied as a payment made to the principal balance of the Prepetition Loan Obligations.

31.    <u>Sales</u>. Except as set forth herein in accordance with the Refi/Sale Process pursuant to the Milestones, it shall be an event of default if a portion of the Prepetition Collateral and Postpetition Collateral is transferred, sold, leased, or otherwise disposed of outside of the ordinary course of business without the prior consent of the Agent.

32.    <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; (d) discharging any Debtor; or (e) abstaining from hearing any of the Chapter 11 Cases or Successor Cases. Subject to the Challenge Deadline, the terms and provisions of this Final Order, including the Debtors' Stipulation and claims, liens, security interests, and other protections granted to the Secured Parties pursuant to this Final Order, shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal or conversion of any of the Chapter 11 Cases or Successor Cases, and shall maintain their priority as provided by this Final Order until all Prepetition Loan Obligations have been indefeasibly and irrevocably paid in full, notwithstanding the expiration of the Specified Period or any earlier termination of the Debtors' authorization to use Cash Collateral.

US.356047946.02

33.     <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, if at any time the Final Order is no longer in full force or effect or any Debtor has sought to amend, modify, supplement, or extend this Final Order without being subject to the consent of the Agent, then neither the entry of this Final Order nor anything herein shall prejudice, or constitute a waiver of, expressly or implicitly: (a) the right of the Secured Parties' to seek any other or supplemental relief in respect of the Debtors, including the right to seek and receive additional adequate protection; (b) any rights of the Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Cases or any Successor Cases, conversion of the Chapter 11 Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan, or (iv) submit a credit bid in respect of any sale of any Prepetition Collateral and Postpetition Collateral

34.     <u>No Waiver by Failure to Seek Relief</u>. The failure of the Secured Parties to seek relief or otherwise exercise its rights and remedies under this Final Order, the Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Secured Parties.

35.     <u>Proofs of Claim</u>. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, the Secured Parties will not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim described herein or otherwise arising under or in connection with Loan Documents or this Final Order, and the Debtors' Stipulations in paragraph F herein shall be deemed to constitute a timely filed proof of claim for the Secured Parties. Notwithstanding the

35

foregoing, the Agent is authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Chapter 11 Cases or Successor Cases for any claim described herein on behalf of itself and the Lenders.

36.     <u>Good Faith</u>. The Secured Parties and their professionals each have acted in good faith in respect of all actions taken by any of them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the use of Cash Collateral in this Final Order, including in respect of the granting of the Adequate Protection Liens, any challenges, or objections to the use of Cash Collateral, and all documents related to and all transactions contemplated by the foregoing.

37.     <u>Effect of Dismissal of Chapter 11 Cases</u>. If any of the Chapter 11 Cases is dismissed, converted, transferred, or substantively consolidated, such dismissal, transfer, conversion or substantive consolidation shall not affect the rights of the Secured Parties under this Final Order, and all of its rights and remedies hereunder shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, transferred, or substantively consolidated. If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide or be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that: (i) subject to paragraph 25 of this Final Order, the Prepetition Liens, Adequate Protection Liens and the Adequate Protection Superpriority Claims granted to and conferred upon the Agent, for itself and on behalf of the Lenders, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order (and that such Adequate Protection Superpriority Claims shall, notwithstanding such dismissal, remain binding on all interested parties), and (ii) to the greatest extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding

36

such dismissal, for the purpose of enforcing the Prepetition Liens, Adequate Protection Liens and Adequate Protection Superpriority Claims referred to in this Final Order.

38.    <u>No Modification of Final Order</u>. In the event any or all of the provisions of this Final Order are modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any uses of cash or Cash Collateral previously authorized or authorized hereunder, or lien, claim, or priority authorized or created hereby. Any liens or claims granted to the Secured Parties arising prior to the effective date of any modification, amendment, or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

39.    <u>Binding Effect of Final Order</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the Secured Parties, all other creditors of any of the Debtors, any Committee or any other Court appointed committee appointed in any Chapter 11 Cases, and all other parties in interest, and their respective successors and assigns, including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors, in each case in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Cases or Successor Case

40.    <u>Effect of Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable

immediately upon execution hereof.

41.     <u>Necessary Action</u>.  The Debtors and Secured Parties are authorized to take any and all actions as are necessary or appropriate to implement and effectuate the terms of this Final Order.

42.     <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004 are satisfied.

43.     <u>Immediate Effect</u>.  Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

44.     <u>Notice</u>.  Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

45.     <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**Dated: March 3rd, 2023**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

US.356047946.02