## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AD1 Urban Palm Bay, LLC, *et al.*, | Case No. 23-10074 (KBO) |
| Debtors.[1] | Jointly Administered |
|  | **D.I. 153, 155, 215, 218, 228, 229, 318, 509, 513, 515, 516, 524, 525, 527, 532, 534, & 543** |

## ORDER (I) APPROVING THE SALE OF THE RUSHHH TAPESTRY BY HILTON HOTEL FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated March 14, 2023 (the "**Sale Procedures Motion**"), of AD1 Urban Palm Bay, LLC ("**AD1**") and its affiliated debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105(a), 363, 365, and 503 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order (the "**Sale Procedures Order**") (i) approving (a) the form of certain transaction agreements, authorizing Debtors to designate Stalking Horse Bidders and approving the Break-Up Fee; (b) the sale procedures (the "**Sale Procedures**")[2] related

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: AD1 Celebration Hotels, LLC (7980); AD1 Daytona Hotels, LLC (7940); AD1 LBV1, LLC (1125); AD1 PB Airport Hotels, LLC (6855); AD1 SW Property Holdings, LLC (2507); AD1 Urban Palm Bay, LLC (3713); AD1 Urban Palm Bay Place, LLC (2385); AD1 Celebration Holdings, LLC (3363); AD1 Daytona Holdings, LLC (2761); AD1 LBV Hotels, LLC (7709); AD1 Palm Beach Airport Hotels, LLC (2187); AD1 Urban Strategy Palm Bay, LLC (9412); and AD1 Urban SW, LLC (6934). The mailing address for each of the Debtors is 1955 Harrison Street, Suite 200, Hollywood, FL 33020.

[2] Capitalized terms used, but not otherwise defined, herein shall have the meaning ascribed to such terms in the Purchase and Sale Agreement (defined below) or, if not defined therein, in the Sale Procedures or the Sale Procedures Motion.

to one or more sales of the Debtors' assets, including the sale of the Property[3] (the "**Sale**"); (c) the form and manner of notices of the Sale Procedures and Auctions, Cure Amounts, designation of the Stalking Horse Bidder and Successful Bidder(s) and Back-Up Bidder(s); and (d) establishing certain notice procedures for determining cure amounts for executory contracts and unexpired leases to be assumed and assigned in connection with the Sale (the "**Assumption and Assignment Procedures**") and (ii) granting certain related relief; after holding a hearing on March 29, 2023 (the "**Sale Procedures Hearing**"), this Court entered the Sale Procedures Order on April 5, 2023 [D.I. 215]; and the Debtors having noticed an auction for the Sale of the Property (the "**Auction**") in accordance with the Sale Procedures; and the Debtors having received no Qualified Bids other than the Purchase and Sale Agreement (as defined below) for the Property; and the Debtors accordingly, pursuant to the Sale Procedures, having canceled the Auction; and those entities listed on Exhibit B to the Purchase and Sale Agreement (as defined below) (the "**Purchaser**") having been selected as the Successful Bidder for the Property; and upon the Purchaser and Debtor AD1 Daytona Hotels, LLC having entered into that certain Purchase and Sale Agreement, dated as of August 14, 2023 (attached hereto as **Exhibit A**, and as it may be amended, modified, or supplemented in accordance with the terms hereof and thereof, the "**Purchase and Sale Agreement**");[4] and pursuant to the Purchase and Sale Agreement, Purchaser having the ability to designate one or more Purchaser Designees (as defined below), each of which, subject to paragraph 33 hereof, shall be entitled to the rights and protections set forth in this order (this "**Sale Order**"), including, without limitation, paragraph 33 hereof; and this Court having conducted a hearing on

---

[3] As set forth in Section 2.1 of the Purchase and Sale Agreement (defined below), the Property consists of the Rushhh Tapestry by Hilton hotel (the "**Daytona Rushhh**") along with the other property and assets set forth in Section 2.1 of the Purchase and Sale Agreement.

[4] For the avoidance of doubt, this Sale Order applies solely to the Purchase and Sale Agreement, which is for the Daytona Rushhh and related property and assets.

August 9, 2023 (the "**Sale Hearing**"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Purchase and Sale Agreement and this Sale Order; and this Court having reviewed and considered the Sale Procedures Motion, the declarations of Douglas P. Hercher in support of the requested relief [D.I. 155 & 527], the *Memorandum of Law and Reply in Support of (I) the Sales of the Debtors' Crowne Plaza and Daytona Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Related Relief* [D.I. 525], all objections thereto, and the arguments of counsel made, and the evidence adduced, at the Sale Procedures Hearing and the Sale Hearing; and it appearing that the terms in the Sale Order and Purchase and Sale Agreement are in the best interests of the Debtors, their estates, creditors and other parties in interest; and upon the entire record of the Sale Procedures Hearing and the Sale Hearing, and after due deliberation thereon, and good cause appearing therefor:

**THE COURT HEREBY FINDS THAT:[5]**

**Jurisdiction, Final Order and Statutory Predicates**

A.    This Court has jurisdiction to hear and determine the approval of the Sale under 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these Chapter 11 Cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under

---

[5] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.       The statutory predicates for the relief sought by the Debtors are sections 105(a), 363, 365 and 503 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014, and the applicable Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

D.       No appeal, motion to reconsider, or similar pleading has been filed with respect to the Sale Procedures Order, and the Sale Procedures Order is a final order of the Court.  The Sale Procedures Order has not been vacated, withdrawn, rescinded, or amended and remains in full force and effect.

### Notice of the Sale, Auction and the Cure Payments

E.       Actual written notice of the Sale Hearing, the proposed Auction, the Sale, and the assumption, assignment and/or transfer of the Purchased Contracts, and a reasonable opportunity to object or be heard with respect thereto and to the entry of this Sale Order has been afforded to all known interested Persons and entities entitled to receive such notice, including, but not limited to, the following parties: (i) counsel to the Secured Lender and Purchaser; (ii) the Office of the United States Trustee; (iii) all entities (or counsel therefore) known to have asserted any lien, charge, claim or encumbrance on the Property; (iv) all federal, state and local regulatory or taxing authorities that are reasonably ascertainable by the Debtors to have a known interest in the Property; (v) known non-debtor Counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Successful Bidder; and (vi) those parties who have requested notice pursuant to Bankruptcy Rule 2002.

F.      The Debtors published notice of the Sale, the Sale Procedures, the form of Purchase and Sale Agreement, the form of Sale Order, the time and place of the proposed Auction, the time and place of the Sale Hearing, and the time for filing an objection to the Sale Order on the website maintained by the Debtors' claims and noticing agent appointed in these Chapter 11 Cases (stretto.com) promptly in accordance with the Sale Procedures Order.

G.      In accordance with the provisions of the Sale Procedures Order, the Debtors have served notices [D.I. 228, 318, & 509] (the "**Assumption Notices**") upon all of the Counterparties to the Purchased Contracts setting forth: (i) the contract(s) and/or lease(s) that may be assumed by the Debtors and assigned to the Purchaser; (ii) the name and address of the Counterparty thereto; (iii) notice of the right of the Debtors and/or the Purchaser to withdraw such request for assumption and assignment of the Purchased Contract(s) prior to the Closing; (iv) the amount, if any, determined by the Debtors to be necessary to be paid to cure and compensate for any existing default in accordance with sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "**Cure Amount**"); and (v) the deadlines by which any such Counterparty must have filed an objection to the proposed assumption and assignment of any Purchased Contract (the "**Assignment Objection Deadline**").

H.      The service of such Assumption Notices (i) was good, sufficient and appropriate under the circumstances of these Chapter 11 Cases; (ii) provided such Counterparties with a full and fair opportunity to object to such assumption, assignment, or transfer and to the proposed Cure Amount set forth in the Assumption Notice; and (iii) was in compliance with the Sale Procedures Order and applicable provisions of the Bankruptcy Rules and Local Rules.  Accordingly, no other or further notice need be given in connection with such assumption, assignment, or transfer or with respect to the Cure Amount.

I.      As evidenced by the affidavits of service previously filed with this Court and as approved under the Sale Procedures Order: (i) due, proper, timely, adequate and sufficient notice of the Sale Procedures Motion, the Sale Procedures, the proposed Auction, the Sale Hearing, the assumption and assignment of the Purchased Contracts, the entry of this Sale Order, the Sale, and the relevant objection deadlines has been provided to all parties-in-interest; (ii) such notice was, and is, good, sufficient and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties-in-interest to object, and to be heard, with respect thereto, and was provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and the applicable Local Rules and in compliance with the Sale Procedures Order; and (iii) no other or further notice of such matters is necessary or shall be required.

## **Business Judgment**

J.      The Debtors have demonstrated good, sufficient and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and other transactions contemplated by the Purchase and Sale Agreement and any additional or ancillary documents contemplated thereby (the "**Transaction Documents**"), including, without limitation, the assumption, assignment, and/or transfer of the Purchased Contracts pursuant to sections 363 and 365 of the Bankruptcy Code (collectively, the "**Transactions**"), prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their Estates, and their creditors.  Such business reasons include, but are not limited to, the facts that: (i) there is substantial risk of depreciation of the value of the Property if the Sale is not consummated promptly; (ii) the Purchase and Sale Agreement constitutes the highest or otherwise best offer for the Property; (iii) the Purchase and Sale

Agreement and the Closing will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' businesses; and (iv) unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Purchase and Sale Agreement, potential creditor recoveries may be substantially diminished.

### **Good Faith of the Purchaser; No Collusion**

K.      Neither the Purchaser nor any affiliated Purchaser Designee is an insider (as that term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors or of the non-Debtor guarantors to that certain Loan Agreement dated as of December 10, 2021, as amended by that First Amendment to Loan Agreement dated as of June 30, 2022, by and between Debtors AD1 LBV1, LLC, AD1 Celebration Hotels, LLC, AD1 Daytona Hotels, LLC, AD1 PB Airport Hotels, LLC, AD1 SW Property Holdings, LLC, AD1 Urban Palm Pay Place, LLC, and AD1 Urban Palm Bay, LLC and the Secured Lender.

L.      The Purchaser and the Purchaser Designees, as applicable, are purchasing the Property in good faith, and is a good faith purchaser, within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to, and granted pursuant to paragraph 31 below, the full rights, benefits, privileges, and protections of that provision and any other applicable or similar bankruptcy and non-bankruptcy law, and each has otherwise proceeded in good faith in all respects in connection with these Chapter 11 Cases and the Transactions in that, *inter alia*: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Property; (ii) the Purchaser complied with the provisions in the Sale Procedures Order and Sale Procedures; (iii) the Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Sale Procedures Order; (iv) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been

disclosed; (v) neither the Purchaser nor any Purchaser Designee has violated section 363(n) of the Bankruptcy Code by any action or inaction; (vi) no common identity of directors or controlling stockholders exists between the Purchaser or the Purchaser Designees, on the one hand, and any of the Debtors, on the other hand; and (vii) the negotiation and execution of the Purchase and Sale Agreement and Transaction Documents were at arms' length and in good faith.

M.    The Transaction Documents were negotiated, proposed, and entered into by the Debtor and the Purchaser without collusion, in good faith, and at arm's-length.  None of the Debtors, the Purchaser, or the Purchaser Designees or any of their respective current and former officers, directors, managers, members, partners, managed funds, affiliates, agents, advisors, attorneys, professionals, and representatives (collectively, the "**Representatives**"), has engaged in any conduct that would cause or permit the Purchase and Sale Agreement or any of the Transaction Documents, or the consummation of the Transactions, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person in connection therewith.  Specifically, the Purchaser and its Representatives have not acted in a collusive manner with any person or entity and the Purchase Price was not controlled by any agreement among bidders.

## Credit Bid

N.    Pursuant to the Purchase and Sale Agreement and sections 363(b) and 363(k) of the Bankruptcy Code, the Purchaser, in addition to the other consideration offered under the Purchase and Sale Agreement, agreed to credit bid certain of the Liabilities outstanding under the Prepetition Loan Agreement as of immediately prior to the Closing Date (collectively, the "**Credit Bid**").

O.    The Credit Bid was valid and proper, and was authorized to be made by the Purchaser, pursuant to the Prepetition Loan Agreement, the Sale Procedures Order, and the Sale Procedures.  No cause exists to limit, reduce, modify, or impair the amount of the Credit Bid under

section 363(k) of the Bankruptcy Code.  In accordance with section 363(k) of the Bankruptcy Code, the Debtors valued each dollar of the Credit Bid as equivalent to one dollar of cash, and such valuation was appropriate and represents a reasonable exercise of the Debtors' business judgment.

P.      Subject to the occurrence of the Closing, (i) the Credit Bid is binding on the Purchaser, the Agent, and the Secured Lender; and (ii) the Debtors and their estates, and all property of the Debtors' estates, are released from any and all claims, liabilities, liens, and interests related to or arising from the Liabilities included in the Credit Bid.

### Highest and Best Offer

Q.      In accordance with the Sale Procedures Order, the Purchase and Sale Agreement was deemed a Qualified Bid (as defined in the Sale Procedures Order) and was eligible to participate at the proposed Auction.

R.      The Debtors and their professionals actively marketed the Property to potential purchasers, as set forth in the Sale Procedures Motion and in accordance with the Sale Procedures Order.  The Debtors conducted the sale process in accordance with, and have otherwise complied in all material respects with, the Sale Procedures Order.  The sale process set forth in the Sale Procedures Order afforded a full, fair and reasonable opportunity for any Person or entity to make a higher or otherwise better offer to purchase the Property. The proposed Auction was duly noticed and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Property. Because the Purchase and Sale Agreement was the only Qualified Bid for the Property covered thereby, the Debtors, in accordance with the Sale Procedures Order, did not conduct the proposed Auction for such Property and determined that the bid submitted by the

Purchaser and memorialized by the Purchase and Sale Agreement is the Successful Bid (as defined in the Sale Procedures) for the Property.

S.    The Purchase and Sale Agreement constitutes the highest and best offer for the Property and will provide a greater recovery for the Debtors' Estates than would be provided by any other available alternative.  The Debtors' determination that the Purchase and Sale Agreement constitutes the highest and best offer for the Property constitutes a valid and sound exercise of the Debtors' business judgment.

T.    The Purchase and Sale Agreement represents a fair and reasonable offer to purchase the Property under the circumstances of these Chapter 11 Cases.  No other Person or entity or group of entities has offered to purchase the Property for greater economic value to the Debtors' Estates than the Purchaser.

U.    Approval of the Purchase and Sale Agreement, and the prompt consummation of the Transactions contemplated thereby, is in the best interests of the Debtors, their creditors, their Estates and other parties-in-interest.

**No Fraudulent Transfer; Not a Successor**

V.    The Purchase and Sale Agreement and Transaction Documents were not entered into, and the Transactions are not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors under Applicable Law, and none of the Parties to the Purchase and Sale Agreement or any of the Transaction Documents are consummating the Transactions with any fraudulent or otherwise improper purpose.  The Purchase Price for the Property constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act and (iii) reasonably

equivalent value, fair consideration, and fair value under any other Applicable Laws of any Governmental Authority.

W.      Except as expressly set forth in the Purchase and Sale Agreement with respect to the Assumed Liabilities, after the Closing neither the Purchaser nor any Purchaser Designee shall have any liability, responsibility, or obligations of any kind or nature whatsoever for any Interest (as defined below) of or against the Debtors, or otherwise related to the Property, and arising prior to the Closing, by reason of the transfer of the Property to the Purchaser or such Purchaser Designee, including, without limitation, under any theory of law or equity, including any laws affecting antitrust, successor, transferee or vicarious liability.  The Purchaser is not holding itself out to the public as a continuation of the Debtors. The Purchaser, as a result of any action taken in connection with the Transactions (including by consummating the Transactions), is not a successor to or a mere continuation of any of the Debtors or their respective estates and there is no continuity or common identity between the Purchaser and the Debtors. Neither the Purchaser nor any Purchaser Designee shall be deemed, as a result of any action taken in connection with the Transactions, to: (1) be a successor (or other such similarly situated party) to any of the Debtors (other than with respect to the Assumed Liabilities as expressly stated in the Purchase and Sale Agreement); or (2) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors.  There is not substantial continuity between the Purchaser and the Debtors, and there is no continuity of enterprise between the Debtors and the Purchaser.  The Purchaser and the Purchaser Designees are not acquiring or assuming any Interest arising prior to the Closing, except as expressly set forth in the Purchase and Sale Agreement with respect to the Assumed Liabilities.

**Validity of Transfer**

X.      Subject to the entry of this Sale Order, the Debtors have full corporate power and authority (i) to perform all of their obligations under the Purchase and Sale Agreement and the Transaction Documents, and the Debtors' prior execution and delivery thereof and performance thereunder, is hereby ratified in full, and (ii) to consummate the Transactions.  The Purchase and Sale Agreement and Transaction Documents, and the Transactions contemplated thereby, have been duly and validly authorized by all necessary corporate action.  No further consents or approvals are required for the Debtors to consummate the Transactions or otherwise perform their respective obligations under the Purchase and Sale Agreement or the Transaction Documents, except in each case as otherwise expressly set forth in the Purchase and Sale Agreement or applicable Transaction Documents.  The consummation of the Transactions and performance under the Transaction Documents do not violate or conflict with any applicable law.

Y.      The Property constitutes property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Debtors are the sole and rightful owners of the Property, and no other person or entity has any ownership right, title, or interests therein.  At Closing, the transfer of the Property to the Purchaser or the Purchaser Designees, including, without limitation, the assumption, assignment and transfer of the Purchased Contracts, will be a legal, valid, and effective transfer thereof, and vest the Purchaser and the Purchaser Designees with all right, title, and interest of the Debtors in and to the Property, free and clear of all liens, claims, encumbrances, and Interests accruing or arising any time prior to the Closing Date, except as expressly set forth in the Purchase and Sale Agreement with respect to the Assumed Liabilities or Permitted Exceptions.

## **Section 363(f) of the Bankruptcy Code Is Satisfied**

Z.      The Purchaser and the Purchaser Designees would not have entered into the Purchase and Sale Agreement and would not consummate the Transactions if the sale of the Property, including the assumption, assignment and transfer of the Purchased Contracts, to the Purchaser or the Purchaser Designees, as applicable, were not free and clear of all liens, claims, encumbrances, and other Interests, including rights or claims based on any successor or transferee liability, of any kind or nature whatsoever (except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities), or if the Purchaser or the Purchaser Designees, any of their respective Affiliates or subsidiaries, or any of their respective Representatives, would, or in the future could, be liable for any of such liens, claims, encumbrances, and other Interests of any kind or nature whatsoever (except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities).  The Purchaser will not consummate the transactions contemplated by the Purchase and Sale Agreement, including the Transactions and the assumption and assignment of the Purchased Contracts, unless this Court expressly orders that none of the Purchaser, any Purchaser Designees, their respective Representatives or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any lien, claim, encumbrance or other Interest.

AA.      The Debtors may sell or otherwise transfer the Property free and clear of all liens, claims, encumbrances, and other Interests because, with respect to each person or entity asserting a lien, claim, encumbrance, or other Interest, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Those holders of liens, claims,

encumbrances, and other Interests against the Debtors, their estates or any portion or subpart of the Property who did not object, or who withdrew, waived, resolved or otherwise settled their objections, to the Sale are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such liens, claims, encumbrances, and other Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their liens, claims, encumbrances, or other Interests, if any, automatically attach to the proceeds of the Sale ultimately attributable to that portion or subpart of the Property in which such creditor alleges or asserts any lien, claim, encumbrance, or other Interest, in the same order of priority, with the same validity, force and effect, that such liens, claims, encumbrances or other Interests had immediately prior to consummation of the Sale as against such portion or subpart of the Property, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

BB.    As used in this Sale Order, the term "**Interest**" includes, in addition to the types of claims described in paragraph CC below, all of the following, in each case to the extent against or with respect to any of the Debtors or in, on, or against or with respect to any portion or subpart of the Property: liens (as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, judgments deposits, credits, allowances, options, restrictions, limitations, contractual commitments, rights, or interests of any kind or nature whatsoever (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory or possession thereof or the District of Columbia), whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or

unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, asserted or unasserted, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, (a) mortgages, deeds of trust, pledges, charges, security interests, hypothecations, encumbrances, easements, servitudes, leases, subleases, rights-of-way, rights of first refusal, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of setoff (except for setoffs validly exercised before the Petition Date), rights of use or possession, licenses, conditional sale arrangements, deferred purchase price obligations, or any similar rights; (b) all claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs validly exercised before the Petition Date), reimbursement, indemnity, contribution or exoneration, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other person, consent rights, options, contract rights, Franchise Agreements, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (c) all debts, liabilities, obligations, contractual rights and claims, Franchise Agreement claims, and labor, employment, and pension claims, including arising under or out of, in connection with or in any way relating to indentures, loan agreements, instruments, agreements, conditional sale or title retention agreements or contracts; (d) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first

offer or first refusal, or consents, or termination of the Debtors' or the Purchaser's interest in the Property, or any similar rights; (e) any rights under labor or employment agreements or collective bargaining agreements; (f) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "**ERISA**")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability (including any withdrawal or termination liability thereunder); (g) any other employee claims related to worker's compensation, retiree medical benefits, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise related to or arise under or pursuant to (i) ERISA, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (ix) state discrimination laws, (x) state unemployment compensation laws or any other similar state laws, (xi) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (xii) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (h) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (i) any bulk sales or similar law; (j) any tax

statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Property or business of the Debtors before the closing of the Sale; (k) any unexpired and executory contract or unexpired lease to which the Debtors are a party that is not assumed, including, for the avoidance of doubt the Franchise Agreements; (l) any other excluded liabilities under the Purchase and Sale Agreement; and (m) Interests arising under or in connection with any acts, or failures to act, of the Debtors or any of their predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act of 1933, the Securities Exchange Act of 1934, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under Applicable Law or otherwise.

CC.     Except as expressly set forth in the Purchase and Sale Agreement with respect to the Assumed Liabilities or Permitted Exceptions, and without limiting the nature or scope of paragraph BB above, the transfer of the Property, including the assumption, assignment and/or transfer of the Purchased Contracts, to the Purchaser or the Purchaser Designees, as applicable, will not subject the Purchaser or the Purchaser Designees, or any of their respective Affiliates or subsidiaries, or any of their respective Representatives to, or subject any Property to or provide recourse for, any liability or encumbrance whatsoever with respect to the operation or condition of the Property prior to the Closing or with respect to any facts, acts, actions, omissions, circumstances or conditions existing, occurring or accruing with respect thereto prior to the Closing Date, including, without limitation, any liability or encumbrance arising from any of the following: (i) any employment or labor agreements, consulting agreements, severance

arrangements, change in control agreements or other similar agreements to which any Debtor is or was a party, (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including without limitation, any pension plan of the Debtors, (iii) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation or other employee benefit plans, agreements, practices and programs and any obligations with respect thereto that arise from the Employee Retirement Income Security Act of 1974, the Fair Labor Standard Act, Title VII of the Civil rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1990, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985 or the Worker Adjustment and Retraining Notification Act, (iv) workmen's compensation, occupational disease or unemployment or temporary disability insurance claims, (v) environment liabilities, debts, claims or obligations that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act or any Environmental Laws, (vi) products liability or warranties, (vii) any bulk sales or similar law, (viii) any litigation by or against the Debtors and (ix) the Laws of the United States, any state, territory or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity, including, without limitation, any theory of antitrust, products liability, or successor, vicarious or transferee liability.  For the avoidance of doubt, the liabilities and encumbrances set forth in this paragraph are included in the defined term "**Interests**" for all purposes of this Sale Order.

**Assumption, Assignment and/or Transfer of the Purchased Contracts**

DD.    The assumption, assignment and/or transfer of the Purchased Contracts to the Purchaser and the Purchaser Designees, as applicable, is integral to the Purchase and Sale Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

EE.    To the extent necessary or required by Applicable Law, the Purchaser has or will have as of the Closing Date: (i) cured, or provided adequate assurance of cure of, any default existing prior to the Closing Date with respect to the Purchased Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. As to each Purchased Contract, the respective Cure Amounts set forth in the applicable Assumption Notices are sufficient for the Debtors to comply fully with the requirements of sections 365(b)(1) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Purchased Contracts.

FF.    The promise of the Purchaser or the Purchaser Designees, as applicable, to perform the obligations first arising under the Purchased Contracts after their assumption and assignment to the Purchaser or the Purchaser Designees, as applicable, constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the Counterparties to such Purchased Contracts. Any objections to the foregoing, the determination of any Cure Amount, or otherwise related to or in connection with the assumption, assignment or transfer of

any of the Purchased Contracts set forth on <u>Exhibit B</u> to the Purchaser or the Purchaser Designees are hereby overruled on the merits or otherwise treated as set forth in <u>paragraph 3</u> below.  Those non-Debtor parties to Purchased Contracts who did not object to the assumption, assignment or transfer of their applicable Purchased Contract, or to their applicable Cure Amount, are deemed to have consented thereto for all purposes of this Sale Order.

GG.    Pursuant to section 2.2 of the Purchase and Sale Agreement, the Purchaser shall maintain certain rights to modify the list of the Purchased Contracts after the date of this Sale Order as set forth in such section.  Such modification rights include, but are not limited to, the right of the Purchaser to designate, by the Determination Date, a Contract for assumption by the Debtors and assignment to the Purchaser or Purchaser Designees as well as the right of the Purchaser to re-designate any Purchased Contract as an Excluded Contract, in the event that this Court determines a Cure Amount for such Purchased Contract in an amount unacceptable to the Purchaser.  The Purchaser would not have agreed to the Transactions without such modification rights.  The notice and opportunity to object provided to Counterparties to such Purchased Contracts and to other parties in interest, as set forth in the Assumption and Assignment Procedures contained in the Sale Procedures Order, fairly and reasonably protects any rights that such Counterparties and other parties in interest may have with respect to such Contracts.

<u>**Compelling Circumstances for an Immediate Sale**</u>

HH.    To maximize the value of the Property and preserve the viability of the business to which the Property relates, to reduce the administrative burden of these Chapter 11 Cases borne by the Debtors and to comply with the compromises reached by the Debtors with the Secured Lender in the stipulation relating to the Debtors' use of cash collateral, it is essential that the Sale of the Property occurs within the time constraints set forth in the Purchase and Sale Agreement.

The Sale must be approved promptly in order to preserve the viability of the Business as a going concern.  There is cause to lift the stay contemplated by Bankruptcy Rules 6004 and 6006 with regards to the Transactions contemplated by this Sale Order, the Purchase and Sale Agreement and the Transaction Documents.  The Purchaser, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Transactions contemplated by the Purchase and Sale Agreement at any time after entry of this Sale Order, subject to the terms and conditions of the Purchase and Sale Agreement.

II.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Purchase and Sale Agreement, the proposed transfer of the Property to the Purchaser or the Purchaser Designees, as applicable, constitutes a reasonable and sound exercise of the Debtors' business judgment, is in the best interests of the Debtors, their Estates, and their creditors, and should be approved.

JJ.     The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363 and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transactions.

KK.     The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

### General Provisions

1.      The Transactions contemplated by the Purchase and Sale Agreement and the Transaction Documents are approved, as set forth in this Sale Order.

2.      This Court's findings of fact and conclusions of law set forth in the Sale Procedures Order are incorporated herein by reference.

3.      All objections to the Sale that have not been withdrawn, waived, resolved, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits with prejudice.  All withdrawn objections are deemed withdrawn with prejudice.  Those parties, including those holders of Interests, who did not object to the Sale or the entry of this Sale Order, or who withdrew, waived, resolved or otherwise settled their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.  Any Counterparty to a Purchased Contract that has not actually filed with the Court an objection to the assumption or assignment of such Purchased Contract as of the date specified in the Sale Procedures Order is deemed to have consented to such assumption and assignment.

### Approval of Purchase and Sale Agreement; Binding Nature

4.      The Purchase and Sale Agreement, all other Transaction Documents and all of the terms and conditions therein, is hereby approved as set forth herein.  Pursuant to 11 U.S.C. §§ 363(b) and (f), the sale of the Property to the Purchaser pursuant to the Purchase and Sale

Agreement free and clear of all liens, claims, encumbrances, and other Interests is approved in all respects.

5.      The consideration provided by the Purchaser for the Property under the Purchase and Sale Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code and any other Applicable Law, and the Transactions may not be avoided or rejected, or costs or damages imposed or awarded against the Purchaser and its Representatives, under section 363(n) or any other provision of the Bankruptcy Code.

6.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (a) consummate the Sale and the other Transactions pursuant to and in accordance with the terms and conditions of the Purchase and Sale Agreement and the Transaction Documents, (b) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their respective obligations as contemplated by the Purchase and Sale Agreement and the Transaction Documents and (c) transfer and assign to the Purchaser or any Purchaser Designee all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Transaction Documents, in each case without further notice to or order of this Court.  The Transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack or purported lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

7.      This Sale Order, the Transaction Documents and the consummation of the Transactions shall be specifically enforceable against and binding in all respects upon the Debtors,

their estates, all creditors, all holders of equity interests in any Debtor, all holders of any claim(s) (whether known or unknown) against any Debtor, any holders of liens, claims, encumbrances, and other Interests of any kind or nature whatsoever against, in or on all or any portion of the Property, all non-Debtor parties to the Purchased Contracts, the Purchaser, the Purchaser Designees, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to cases under chapter 7 under the Bankruptcy Code of any of these Chapter 11 Cases or any, examiner, plan administrator, litigation trustee, liquidation trustee or other fiduciary appointed these Chapter 11 Cases or any successor cases, and shall not be subject to rejection or avoidance by the foregoing parties or any other person or entity.

### Transfer of Property Free and Clear of Interests; Injunction

8.      Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Property, including but not limited to the Purchased Contracts, to the Purchaser or the Purchaser Designees, as applicable, on the Closing Date in accordance with the Purchase and Sale Agreement and Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding, effective and full and complete general assignment, conveyance and transfer of the Property transferring good and marketable and indefeasible title and interest in the Property to the Purchaser or Purchaser Designees, as applicable, and the Purchaser or the Purchaser Designees, as applicable, shall take title to and possession of the  Property free and clear of all liens, claims, encumbrances, and other Interests of any kind or nature whatsoever, except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities.  Subject to the occurrence of the Closing, this Sale Order also shall be construed, and constitute for any and all

purposes, a complete and general assignment of all right, title and interest of the Debtors and each of their estates to the Purchaser in the Purchased Contracts.

9.      All such liens, claims, encumbrances, and/or other Interests in, on or against the Property shall automatically attach solely to the proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Property, subject to any claims and defenses the Debtors and their Estates may possess with respect thereto.  This Sale Order shall be effective as a determination that, on and as of the Closing, all liens, claims, encumbrances, and other Interests of any kind or nature whatsoever (except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities) have been unconditionally released, discharged and terminated in, on or against the Property.  The provisions of this Sale Order authorizing and approving the transfer of the Property free and clear of liens, claims, encumbrances, and other Interests shall be self-executing, and neither the Debtors nor the Purchaser (or the Purchaser Designees) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order, the Purchase and Sale Agreement and the other Transaction Documents.

10.     Except as expressly permitted by the Purchase and Sale Agreement or this Sale Order, all Persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, dealers, employees, litigation claimants (and/or potential litigation claimants), parties to executory contracts and unexpired leases, customers, licensors, current and former employees and other creditors, and all holders of liens, claims, encumbrances or other Interests against or in a Debtor or any of the Property (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or noncontingent, senior or subordinated) (other than Permitted Exceptions and Assumed Liabilities) are hereby forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing, whether by payment, setoff (except for setoffs validly exercised before the Petition Date), or otherwise, directly or indirectly,  their respective liens, claims, encumbrances, or other Interests against the Purchaser or any Purchaser Designees, any of their respective Affiliates and subsidiaries, any of their respective Representatives, and any of their respective successors and assigns, and each of their respective property and assets, including, without limitation, the Property.  On and after the Closing Date, to the extent the holder of a lien, claim, encumbrance or other Interest does not comply with paragraph 11 of this Sale Order, the Purchaser or the Purchaser Designees, as applicable, shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of a lien, claim, encumbrance, or other Interest to release, discharge and terminate such liens, claims, encumbrances, or other Interests in, on and against the Property as provided for herein, as such liens, claims, encumbrances, or other Interests may have been recorded or may otherwise exist. On and after the Closing Date, and without limiting the foregoing, to the extent the holder of a lien, claim, encumbrance or other Interest does not comply with paragraph 11 of this Sale Order, the Purchaser and the Purchaser Designees shall be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien, claim, encumbrance, or other Interest that is extinguished or otherwise released pursuant to this Sale Order.  This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code for the Purchaser and the Purchaser Designees to file, in accordance with the terms of this Sale Order, UCC termination statements with respect to all security interests

in or liens on the Property.  Following the Closing, no party shall interfere with the Purchaser's or Purchaser Designees' title to or use, enjoyment and operation of the Property based on or related to any such lien, claim, encumbrance or other Interest (other than Permitted Exceptions and Assumed Liabilities) or based on any action or failure to act of the Debtors in these Chapter 11 Cases or any successor cases.

11.     On and after the Closing, the Persons holding a lien, claim, encumbrance, or other Interest (other than a Permitted Exception or an Assumed Liability) shall execute such documents and take all other actions as may be reasonably necessary to release their respective liens, claims, encumbrances, or other Interests in the Property, as such liens, claims, encumbrances, or other Interests may have been recorded or otherwise filed or exist.  The Purchaser or the Purchaser Designees, as applicable, may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county or other jurisdiction in which any Debtor is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be conclusive evidence of and sufficient to release, discharge and terminate any of the liens, claims, encumbrances, or other Interests as set forth in this Sale Order as of the Closing Date.  All Persons and entities that are in possession of any portion of the Property on the Closing Date shall promptly surrender possession thereof to the Purchaser or the Purchaser Designees at the Closing.

12.     The transfer of the Property to the Purchaser or the Purchaser Designees pursuant to the Purchase and Sale Agreement and Transaction Documents does not require any consents other than specifically provided for in the Purchase and Sale Agreement.

13.     This Sale Order is and shall be binding upon and govern the acts of all Persons and entities (including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, and secretaries of state, federal and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property or Purchased Contracts.  Each of the foregoing Persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge and terminate any of the Interests or to otherwise consummate the Transactions contemplated by this Sale Order, the Purchase and Sale Agreement or any Transaction Document.  All liens, claims, encumbrances and other Interests of record as of the date of this Sale Order shall be forthwith deemed removed and stricken as against the Property and Purchased Contracts.  All persons and entities described in this paragraph are authorized and specifically directed to strike all such recorded liens, claims, encumbrances and other Interests against the Property and Purchased Contracts from their records, official and otherwise.

### **Purchased Contracts; Cure Payments**

14.     Pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtors' assumption, and assignment and transfer to the Purchaser or Purchaser Designees, of the Purchased Contracts is hereby authorized and approved in full subject to the terms set forth below.  The Purchaser shall, on or prior to the Closing (or as soon thereafter as reasonably practicable), pay the Cure Amounts and cure any and all other defaults and breaches under the Purchased Contracts that are required to be cured under the Bankruptcy Code so that such Purchased Contracts may be assumed by the Debtors and assigned to the Purchaser or Purchaser Designees, as applicable, on the Closing Date in accordance with

this Sale Order, another order of the Court, the Purchase and Sale Agreement, and the Transaction Documents.

15.     Upon and as of the Closing, the Debtors are authorized and empowered to, and shall, (a) assume, assign and/or transfer each of the Purchased Contracts to the Purchaser or the Purchaser Designees, as applicable, free and clear of all liens, claims, encumbrances, and Interests, except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.  No objections to the Cure Amounts ("**Cure Objections**") were timely filed with respect to the Purchased Contracts listed on Exhibit B attached hereto, any informal Cure Objections were resolved as provided by the supplemental Assumption Notices [D.I. 318, 509, & 532], and the Assignment Objection Deadline has passed.  The Cure Amounts for the contracts listed on Exhibit B are hereby fixed at the amounts set forth in the applicable Assumption Notice, and the Counterparties to such Purchased Contracts are forever bound by such Cure Amounts.  The payment of the applicable Cure Amounts (if any) shall, pursuant to section 365 of the Bankruptcy Code and other applicable Law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the Closing Date and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, on and as of the Closing Date, other than such payment, none of the Debtors, the Purchaser or the Purchaser Designees, as applicable, shall have any further liabilities or obligations to the non-Debtor parties to the Purchased Contracts with respect to, and the non-Debtor parties to the Purchased Contracts shall be forever enjoined and barred from seeking, any additional amounts or claims (as defined in section 101(5) of the Bankruptcy Code) that arose,

accrued or were incurred at any time on or prior to the Closing Date on account of the Debtors'

cure or compensation obligations arising under section 365 of the Bankruptcy Code.    The

Purchaser or the Purchaser Designees, as applicable, have provided adequate assurance of future

performance under the relevant Purchased Contracts within the meaning of sections 365(b)(1)(C),

365(b)(3) (to the extent applicable) and 365(f) of the Bankruptcy Code.

16.    To the extent any provision in any Purchased Contract assumed or assumed and

assigned (as applicable) pursuant to this Sale Order or any other order of the Court (including,

without limitation, any "change of control" provision or those of the type described in sections

365(b)(2) and (f) of the Bankruptcy Code) (a) prohibits, restricts or conditions, or purports to

prohibit, restrict or condition, such assumption or assignment, or (b) is modified, breached or

terminated, or deemed modified, breached or terminated by any of the following: (i) the

commencement of these Chapter 11 Cases, (ii) the insolvency or financial condition of any Debtor

at any time before the closing of these Chapter 11 Cases, (iii) any Debtor's assumption or

assumption and assignment (as applicable) of such Purchased Contract, (iv) the consummation of

the Transactions or (v) the consummation or occurrence of any change of control of any of the

Debtors, then such provision shall be deemed modified so as to not entitle the non-Debtor party

thereto to prohibit, restrict or condition such assumption or assignment, to modify or terminate

such Purchased Contract, or to exercise any other default-related rights or remedies with respect

thereto, including, without limitation, any such provision that purports to allow the non-Debtor

party thereto to recapture such Purchased Contracts, impose any penalty thereunder, condition any

renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or

otherwise impose any other fees or other charges in connection therewith.    All such provisions

constitute unenforceable anti-assignment provisions that are void and of no force and effect

pursuant to sections 365(b), 365(e) and 365(f) of the Bankruptcy Code.  To the extent a party is to receive a cure payment pursuant to this Sale Order or any other order of the Court and such party has asserted a lien against the Debtors' or their customer's assets or work, such party shall be required to execute a lien release, and provide evidence thereof to both the Debtors and the Purchaser, as a condition to receiving such cure payment.

17.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser or the Purchaser Designees, as applicable, of the Purchased Contracts have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser or the Purchaser Designees, as applicable, shall be fully and irrevocably vested with all right, title and interest of the Debtors in and under the Purchased Contracts free and clear of all liens, claims, encumbrances and other Interests, and each Purchased Contract shall be fully enforceable by the Purchaser or the Purchaser Designees, as applicable, in accordance with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order or another order of this Court.  Upon and as of the Closing, the Purchaser or the Purchaser Designees, as applicable, shall be deemed to be substituted for all purposes for the Debtors as a party to the applicable Purchased Contracts, and shall have any and all rights and benefits of the Debtors under all such Purchased Contracts without interruption or termination of any kind, and all terms thereof applicable to the Debtors shall apply to such entity as if such Purchased Contracts were amended to replace the Debtors with such entity and all references in a Purchased Contract to one or more of the Debtors or an affiliate of a Debtor shall be deemed modified to be a reference to the Purchaser, a Purchaser Designee or their respective affiliate and, accordingly, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Purchased Contracts.

18.     Upon the payment of the applicable Cure Amount, if any, the Purchased Contracts will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Purchased Contracts as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition that, with the passage of time or giving of notice, or both, would constitute such a default.   As applicable, the Transactions and assumption and assignment of the Purchased Contracts approved herein includes the conveyance of all beneficial rights, easements, permits, licenses, servitudes, rights-of-way, surface leases and other surface rights, and all contracts, agreements, and instruments by which they are bound, appurtenant to, and used or held for use in connection with the Purchased Contracts.

19.     The rights of the Purchaser to modify the list of the Purchased Contracts after the date of this Sale Order as set forth in section 2.2 of the Purchase and Sale Agreement and below are hereby approved, which, subject to paragraph 41 of this Sale Order, in the case of the Daytona Rushhh Franchise Agreement is subject to paragraphs 39 and 40 of this Order.   In particular, the Purchaser shall be authorized to designate additional executory contracts and unexpired leases as Purchased Contracts subsequent to the date hereof upon notice to the Debtors in accordance with the terms of section 2.2 of the Purchase and Sale Agreement.   Upon any such designation after the date hereof, the Debtors shall file a notice with the Court and serve such notice on the counterparty to any executory contract or unexpired lease contained therein.   To the extent the applicable executory contract or unexpired lease was not included on Schedule 1 to the Notice of Successful Bidder filed with the Court on August 4, 2023, any such counterparty shall have the right to object to the designation of its contract and/or lease as a Purchased Contract as more fully set forth in such notice.   With respect to any executory contract or unexpired lease that is not designated a Purchased Contract by the Determination Date and provided such executory contract or unexpired

lease has not been rejected by Debtors after the Determination Date pursuant to section 365 of the Bankruptcy Code, upon written notice(s) from the Purchaser to the Debtors given at any time after the Determination Date, the Debtors are hereby authorized to take all actions reasonably necessary to assume and assign to the Purchaser or the Purchaser Designees pursuant to section 365 of the Bankruptcy Code any such executory contract or unexpired lease as set forth in such notice(s); *provided* that any Cure Amount applicable thereto shall be satisfied solely by the Purchaser. Notwithstanding anything in this Sale Order to the contrary, on the date any such executory contract or unexpired lease is assumed and assigned to Purchaser or Purchaser Designee, such executory contract or unexpired lease shall thereafter be deemed a Purchased Contract for all purposes under this Sale Order and the Purchase and Sale Agreement.

20.     All Counterparties to the Purchased Contracts shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Purchaser or Purchaser Designee shall enjoy all of the Debtors' rights, benefits and privileges under each such Purchased Contract as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.   All Counterparties to the Purchased Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents that may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

21.     Nothing in this Sale Order, the Sale Procedures Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors or the Purchaser that any Purchased Contract is an executory contract or unexpired lease under section 365 of the

Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors to the Purchaser of the Purchased Contracts shall not be a default thereunder.  All defaults or other obligations of the Debtors under the Purchased Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Purchaser on the Closing Date or as soon thereafter as reasonably practicable (or as otherwise agreed with the Counterparty to such Purchased Contract), and the Purchaser shall have no liability or obligation arising or accruing under the Purchased Contracts prior to the Closing, except as otherwise expressly provided in the Purchase and Sale Agreement.

22.     The failure of the Debtors, the Purchaser, or the Purchaser Designee, as applicable, to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of its respective rights to enforce every term and condition of the Purchased Contracts.

23.     Each non-Debtor party to a Purchased Contract hereby is forever barred, estopped, and permanently enjoined from raising or asserting against (a) the Debtors, the Purchaser, the Purchaser Designees or their respective successors and assigns, or the property of such parties, any fee, acceleration, default, loss of rights, increase in obligations, breach or claim of loss, penalty, or condition to assignment, existing, arising under or related to the Purchased Contracts, existing as of the date that such Purchased Contracts are assumed, or arising by reason of the consummation of transactions contemplated by the Purchase and Sale Agreement (including the Transactions and the assumption and assignment of the Purchased Contracts or any state of facts, events, circumstances or occurrences resulting therefrom), including, without limitation, any breach related to or arising out of change-in-control provisions in such Purchased Contracts, or any

purported written or oral modification to the Purchased Contracts and (b) the Purchaser or any Purchaser Designees (or their respective property, including the Property) any claim, counterclaim, breach, condition, or setoff (except for setoffs validly exercised before the Petition Date) asserted, or assertable against the Debtors existing prior to the Closing or arising by reason of the Closing except for the Assumed Liabilities. Each non-Debtor party to a Purchased Contract is forever barred, estopped and permanently enjoined from setting off (except for setoffs validly exercised before the Petition Date) any amounts owed by them to the Purchaser under a Purchased Contract against amounts owed or asserted to be owed to them by any of the Debtors under any Contract that is not assigned to the Purchaser or any other claim held by such counterparty against the Debtors. Any party that may have had the right to consent to the assignment of a Purchased Contract or a change of control with respect to the Debtors, or to assert or claim any default or violation under a Purchased Contract as a result of or related to the assignment of a Purchased Contract or a change of control with respect to the Debtors, is deemed to have consented to such assignment for purposes of section 365 of the Bankruptcy Code or change of control, or is deemed to have irrevocably waived any such default or violation, if such party failed to timely object to the assumption and assignment of such Purchased Contract.

24.     The Purchaser and any Purchaser Designees shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any of the Purchased Contracts to the extent not previously provided by the Debtors.

### Additional Injunction; No Successor Liability

25.     Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities are hereby forever prohibited and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (a) with the ability of the Debtors to sell and transfer the

Property to the Purchaser, and assume and assign the Purchased Contracts, in accordance with the terms of the Transaction Documents and this Sale Order, (b) with the ability of the Purchaser to acquire, take possession of, use and operate the Property and the Purchased Contracts and to conduct the business in accordance with the terms of the Transaction Documents and this Sale Order and (c) with the ability of the Debtors and the Purchaser to consummate the transactions contemplated by the Transaction Documents or to perform their respective obligations under any of the Transaction Documents; provided, however, that the foregoing restriction shall not impair the right of any party in interest with the requisite standing to appeal this Sale Order in accordance with applicable law or opposing any appeal of this Sale Order.

26.     Effective upon the Closing Date and except as expressly set forth in the Purchase and Sale Agreement and the Transaction Documents with respect to the Permitted Exceptions and Assumed Liabilities, all Persons and entities are forever prohibited and permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral or other proceeding), to collect, recover or offset any Interest; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order with respect to a lien, claim, encumbrance, or Interest, (iii) creating, perfecting or enforcing any Interest, or (iv) asserting any setoff (except for setoffs validly exercised before the Petition Date) or right of subrogation of any kind with respect to an Interest, in each case as against the Purchaser, the Purchaser Designees, any of their respective Affiliates or subsidiaries, or any of their respective Representatives, or any of their respective property or assets, including the Property.

27.     The Purchaser, any Purchaser Designees and their Representatives will be providing substantial consideration under the Purchase and Sale Agreement and the Transaction

Documents, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability against the Purchaser, any Purchaser Designees and their respective Representatives and which shall be deemed to have been given in favor of the Purchaser, any Purchaser Designee and their respective Representatives by all holders of liens, claims, encumbrances or other Interests in or against the Debtors or the Property.

28.     None of the Purchaser, any Purchaser Designee or their respective Representatives is a "successor" to the Debtors or their estates by reason of any theory of law or equity.  The Transactions contemplated by the Purchase and Sale Agreement and the Transaction Documents do not cause there to be, and there is not (i) a consolidation, merger, or *de facto* merger of the Purchaser or any Purchaser Designee, on the one hand, with or into the Debtors or the Debtors' estates, on the other hand, or vice versa; (ii) a substantial continuity or continuity of enterprise between the Purchaser or Purchaser Designee, on the one hand, and the Debtors or the Debtors' estates, on the other hand, (iii) a common identity between the Purchaser or any Purchaser Designee, on the one hand, and the Debtors or the Debtors' Estates, on the other hand, or (iv) a mere continuation of the Debtors or their Estates, on the one hand, with the Purchaser or any Purchaser Designee, on the other hand, and the Purchaser and any Purchaser Designees are not an alter ego of any Debtor.

29.     Except as expressly set forth in the Purchase and Sale Agreement with respect to the Permitted Exceptions and Assumed Liabilities, the transfer of the Property, including, without limitation, the assumption, assignment and transfer of any Purchased Contract, to, and the use of the assets previously operated by the Debtors by, the Purchaser or any Purchaser Designee shall not cause or result in, or be deemed to cause or result in, the Purchaser, any Purchaser Designee, any of their respective Affiliates or subsidiaries, or any of their respective Representatives, or any

of their respective successors and assigns, being deemed a successor in any respect to the Debtors' businesses or having any liability, obligation, or responsibility for, or any Property being subject to or being recourse for, any lien, claim, encumbrance, or Interest arising prior to the Closing whatsoever, whether arising under any bulk sale law, doctrines of successor, transferee or vicarious liability, breach of fiduciary duty, aiding or abetting breach of fiduciary duty or otherwise, whether at law or in equity, directly or indirectly, and whether by payment, setoff (except for setoffs validly exercised before the Petition Date) or otherwise, including, without limitation, any matters, claims or liabilities arising under any of the theories set forth in underlined paragraphs BB and CC.

30.     For the avoidance of doubt, notwithstanding the consummation of the Transactions and the employment by the Purchaser or Purchaser Designee of certain Persons previously employed by the Debtors, (i) the Purchaser and the Purchaser Designees shall not have any obligations or liabilities to any employee of the Debtors or in respect of any employee benefits owing to any employee of the Debtors by the Debtors or by any plan or program administered by the Debtors or for the benefit of the Debtors' employees, and (ii) any obligations of the Purchaser and the Purchaser Designees to any such Person shall be expressly limited to (x) those obligations expressly agreed upon by the Purchaser or the Purchaser Designees (if any) with such Person, and (y) those obligations explicitly assumed by the Purchaser or the Purchaser Designees (if any) under the Purchase and Sale Agreement.

## Good Faith

31.     The Transactions contemplated by this Sale Order, the Purchase and Sale Agreement and Transaction Documents are undertaken by the Purchaser, the Purchaser Designees and their respective Representatives without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal

of the authorization provided herein to consummate the Sale and other Transactions shall not alter, affect, limit, or otherwise impair the validity of the Sale or such other Transactions (including the assumption, assignment and/or transfer of the Purchased Contracts), unless such authorization and consummation are duly stayed pending such appeal. Each of the Purchaser and the Purchaser Designees is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges and protections of section 363(m) of the Bankruptcy Code. The Debtors, the Purchaser, any Purchaser Designees and their respective Representatives have acted, and will be acting, in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Order.

32.    As a good faith purchaser of the Property, the Purchaser has not entered into an agreement with any other potential bidders, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Property, and, therefore, neither the Debtors nor any representative of or successor in interest to the Debtors' estates nor any other party in interest shall be entitled to bring any claim or cause of action against the Purchaser, any Purchaser Designees or their respective Representatives, and the Sale Transaction may not be avoided, in each case, pursuant to section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) of the Bankruptcy Code in respect of the Purchase and Sale Agreement, any of the other Transaction Documents or the Transactions.

### Other Provisions

33.    Purchaser is authorized, upon further notice to the Court, to sell or otherwise assign or transfer the PSA or its rights thereunder to any person or entity, including any affiliated or unaffiliated person or entity (any such person or entity, a "Purchaser Designee"). Subject to the immediately preceding sentence, the Purchaser is hereby authorized, in its discretion, in connection

with consummation of the Transactions to allocate the Property, Assumed Liabilities, and Purchased Contracts among its Purchaser Designees in a manner as it, in its discretion, deems appropriate and such Person shall be entitled to all of the rights, benefits, privileges and protections of the Purchaser as are accorded to the Purchaser under this Sale Order, and the Debtors shall, to the extent set forth in the Purchase and Sale Agreement and Transaction Documents, cooperate with and take all actions reasonably requested by Purchaser to effectuate any of the foregoing.  In the event that the Purchaser designates any Purchaser Designee to acquire any portion or subpart of the Property, including, without limitation, any Purchased Contracts, then any reference to the "Purchaser" in this Sale Order shall be deemed to be a reference to "the Purchaser and/or such applicable Purchaser Designee," unless the context requires otherwise.  Upon the transfer of any portion or subpart of the Property or any Purchased Contract to, or the assumption of any Assumed Liability by, a Purchaser Designee, such Purchaser Designee shall be solely responsible for such portion or subpart of the Property, Assumed Liability, or Purchased Contract (including performance thereunder), as applicable.

34.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, delay, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the business or the operation of the Property on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Purchase and Sale Agreement or any of the other Transaction Documents, including the Transactions, the transfer of the Property and the assumption and assignment of the Purchased Contracts. Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions.

35.     To the maximum extent available under Applicable Law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to their business or the Property, and, to the maximum extent available under Applicable Law, and to the extent provided for under the Purchase and Sale Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are directed to be, transferred to the Purchaser as of the Closing Date.

36.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these Chapter 11 Cases, (b) any subsequent chapter 7 case into which any such Chapter 11 Case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall alter, conflict with or derogate from the provisions of the Purchase and Sale Agreement, the other Transaction Documents or the terms of this Sale Order.  To the extent of any such conflict or derogation, the terms of this Sale Order, the Purchase and Sale Agreement and the other Transaction Documents shall govern.

37.     The provisions of this Order, the Purchase and Sale Agreement and the other Transaction Documents, and any actions taken pursuant hereto or thereto, shall survive entry of any order which may be entered confirming or consummating any chapter 11 plan of the Debtors, or which may be entered converting these Chapter 11 Cases from chapter 11 to chapter 7 of the Bankruptcy Code or dismissing these Chapter 11 Cases, and the terms and provisions of the Purchase and Sale Agreement and the other Transaction Documents, as well as the rights and interests granted pursuant to this Sale Order, the Purchase and Sale Agreement and the other Transaction Documents, shall continue in these Chapter 11 Cases or any superseding cases and shall be specifically performable and enforceable against and binding upon the Debtors, their

estates, all creditors, all holders of equity interests in the Debtors, all holders of claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in or on all or any portion of the Property, the Purchaser and their respective successors and permitted assigns, and any trustee, responsible officer or other fiduciary hereafter appointed or elected as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, including without limitation plan fiduciaries, plan administrators, litigation or liquidation trustees appointed during the pendency of, or upon confirmation of a chapter 11 plan in, these Chapter 11 Cases.

38.     Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply.  Accordingly, the Debtors are authorized and empowered to close the Sale and other Transactions immediately upon entry of this Sale Order.

39.     Subject to paragraph 41 of this Sale Order, nothing in the Sale Order shall be deemed to invalidate, modify or override paragraphs 26, 29 and 30 of the Sale Procedures Order and such paragraphs shall remain in full force and effect.

40.     Notwithstanding any other conflicting provisions of the Motion, the Purchase and Sale Agreement or any other Transaction Document, this Sale Order, or any of the exhibits thereto, but subject to paragraph 41 of this Sale Order, the following provisions shall control with respect to that certain franchise agreement dated May 21, 2018, between AD1 Daytona Hotels, LLC, and Hilton Franchise Holding LLC ("**Hilton**") (collectively, the "**Daytona Rushhh Franchise Agreement**"):

(i)       The transaction contemplated by this Sale Order does not and shall not include or otherwise provide for a transfer, sale or assumption/assignment of the Daytona Rushhh Franchise Agreement. Neither this Sale Order nor the Purchase and Sale Agreement shall operate to transfer or confer upon Purchaser any rights to the Daytona Rushhh Franchise Agreement or to otherwise use the protected intellectual property of Hilton including trademarks, service marks, and logos. Any continued operation of the Property as a Tapestry™ is conditioned upon a separate written agreement between the Purchaser and Hilton.

(ii)     This Sale Order does not and shall not permit a sale free and clear of Hilton's rights against the Purchaser or Purchaser Designees of the Property to the extent such Purchaser or Purchaser Designees use trademarks or other intellectual property of Hilton in connection with the Property after the Closing of the Sale for the Property unless such Purchaser or Purchaser Designee have entered into a new franchise agreement with Hilton.

(iii)    If the Closing Date occurs, the Daytona Rushhh Franchise Agreement shall, as of 12:01 a.m. on the Closing Date, be rejected by the Debtor pursuant to section 365(a) of the Bankruptcy Code and deemed terminated by Hilton, and such rejection and termination will occur automatically without the requirement of any further action on the part of the Debtor or Hilton to effect such rejection and termination.

(iv)    With respect to the Daytona Rushhh Franchise Agreement, nothing in the Motion, the Purchase and Sale Agreement or any other Transaction

Document, this Sale Order, or any of the exhibits thereto, shall waive, impair, or restrict Hilton's rights (a) to seek enforcement of the Debtor's post-termination non-monetary obligations to Hilton under the Daytona Rushhh Franchise Agreement, including those set forth in Section 13.6 thereof, and any de-identification provisions of the existing Daytona Rushhh Franchise Agreement from the Bankruptcy Court post-rejection to the extent that (1) the de-identification provisions have not been completed pursuant to the terms of the existing Daytona Rushhh Franchise Agreement and (2) the Purchaser or the Purchaser Designee have not entered into a new franchise agreement with Hilton; and/or (ii) seek damages against the Debtor and/or the Successful Bidder for improper use of Hilton's intellectual property after the Closing, with all rights of the Debtors, the Successful Bidder and any other person to object to any of the aforementioned claims being fully preserved.

41.    Nothing in this Sale Order, including <u>paragraphs 19, 39 and 40</u> of this Sale Order, is intended, or shall be deemed, to impede, alter or modify any of the rights or responsibilities or claims or defenses between Hilton Franchise Holding LLC, as franchisor, and the Purchaser, as lender, as set forth in that certain letter agreement, dated January 19, 2023, among HPS Investment Partners, LLC, Hilton Franchise Holding LLC, AD1 Urban Palm Bay, LLC and AD1 Daytona Hotels, LLC.

42.    Nothing in this Sale Order shall modify or waive any closing conditions or termination rights in Articles IX, X and XIII of the Purchase and Sale Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

43.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transactions.

44.     As of the Closing Date, the Debtors are authorized to (i) change the name of each Debtor to a name that was not included as part of the Property and (ii) submit an order to this Court under certification of counsel changing the caption of these Chapter 11 Cases to reflect the new corporate names.

45.     The failure specifically to include any particular provision of the Purchase and Sale Agreement or any other Transaction Document in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Purchase and Sale Agreement and the other Transaction Documents be authorized and approved in their entirety.

46.     The Purchase and Sale Agreement and Transaction Documents may be modified, amended or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of this Court, provided that any such modification, amendment or supplement shall not have a material adverse effect on either (a) the Debtors' estates or (b) a third party unless approved by order of this Court.

47.     For the avoidance of doubt, nothing in this Sale Order shall constitute, pursuant to 1146(a), the grant of a tax exemption under a plan confirmed under section 1129 or 1191.

48.     Subject to paragraph 36 of this Sale Order and the Purchaser's and Secured Lender's consent, the Sale may be consummated through a confirmed plan of reorganization, in which event the order confirming such plan shall supersede this Sale Order.

49.     The City of Daytona Beach (the "City") shall apply the security deposits currently held by it to the remaining balances owed by the Debtor to the City on all accounts of the Debtor in the amount of $3,383.00.  The City shall retain any surplus security deposit as adequate

assurance until the Closing date.  If the surplus is less than $1,430, the Debtor shall deposit an additional amount of security deposit so that the total security deposit held by the City equals $1,430.  After the Closing, the City shall pay any remaining surplus security deposit (the "Surplus") to the Purchaser.  If Purchaser or Purchaser Designee designates the City's existing water/utility accounts (account numbers:  00018090-04, 00018089-04 & 00018091-05) (the "Daytona Beach Contract") as a Purchased Contract, the Purchaser or Purchaser Designee, as applicable, shall establish new security deposits for all accounts in accordance with the terms of the Daytona Beach Contract.  If the Purchaser or Purchaser Designee designates the Daytona Beach Contract as an Excluded Contract, the Surplus shall not be treated as a Pre-Paid Expense under the Purchase and Sale Agreement.

50.    This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things, (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Purchase and Sale Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder, (ii) compel delivery of the Property to the Purchaser or Purchaser Designees; (iii) enforce the injunctions and limitations of liability set forth in this Sale Order, and (iv) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Purchased Contracts.

51.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

52.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the provisions of this Sale Order and the terms and conditions of the Purchase and Sale Agreement and the Transaction Documents.

53.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Procedures Motion, the terms of this Sale Order shall govern.  To the extent there are any inconsistencies between the terms of this Sale Order or the Sale Procedures Order, on the one hand, and the Purchase and Sale Agreement or any Transaction Document, on the other hand, the terms of this Sale Order and the Sale Procedures Order shall govern, as applicable.

54.     The provisions of this Sale Order are nonseverable and mutually dependent.

55.     To the extent the Debtors or any trustee(s), receiver(s), responsible officer(s) or other fiduciary appointed or elected, in these Chapter 11 Cases or any successor cases, receive, hold, or otherwise come into possession after the Closing of any payment or asset that constitutes Property, such payment or asset shall be held in trust for the benefit of the Purchaser and the Debtors or any such trustee(s), receiver(s), responsible officer(s) or other fiduciary shall promptly deliver or otherwise turn over such payment or asset to the Purchaser.

**Dated: August 15th, 2023**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

47