IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AD1 Urban Palm Bay, LLC, *et al.*, | Case No. 23-10074 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | Objection Deadline: October 12, 2023, at 4:00 p.m. (ET)<br>Hearing Date: October 19, 2023, at 1:00 p.m. (ET) |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF BERKADIA REAL ESTATE ADVISORS, LLC AS BROKER FOR THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

AD1 Urban Palm Bay, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby file this application (this "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 327, and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2014(a), 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing and approving the retention and employment of Berkadia Real Estate Advisors, LLC ("Berkadia" or the "Company") as broker for the Debtors effective as of the Petition Date (as defined below), and (ii) modifying, as necessary, the timekeeping requirements under Bankruptcy Rule 2016(a)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: AD1 Celebration Hotels, LLC (7980); AD1 Daytona Hotels, LLC (7940); AD1 LBV1, LLC (1125); AD1 PB Airport Hotels, LLC (6855); AD1 SW Property Holdings, LLC (2507); AD1 Urban Palm Bay, LLC (3713); AD1 Urban Palm Bay Place, LLC (2385); AD1 Celebration Holdings, LLC (3363); AD1 Daytona Holdings, LLC (2761); AD1 LBV Hotels, LLC (7709); AD1 Palm Beach Airport Hotels, LLC (2187); AD1 Urban Strategy Palm Bay, LLC (9412); and AD1 Urban SW, LLC (6934). The mailing address for each of the Debtors is 1955 Harrison Street, Suite 200, Hollywood, FL 33020.

US.356895879.07

and Local Rule 2016-2. In support of this Application, the Debtors submit the declaration of Kyle Stevenson, attached hereto as **Exhibit B** (the "Stevenson Declaration"). In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Local Rule 9013-1(f), the Debtors consent to the Court's entry of a final judgment or order with respect to this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code; Bankruptcy Rules 2014(a), 2016, and 5002, and Local Rule 2014-1 and 2016-2.

## BACKGROUND

4. On January 22, 2023 (the "Petition Date"), each of the Debtors filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner. The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

5. On February 22, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") filed a statement with the Court that no committee of unsecured creditors was appointed in the Chapter 11 Cases as a result of insufficient responses. *See* Docket No. 94.

6. As set forth in the *Declaration of Alex Fridzon in Support of Debtors' Chapter 11 Petitions and First-Day Motions and Applications* [Docket No. 16] (the "First Day Declaration"),[2] as of the Petition Date, the Debtors owned and operated eight (8) hotels throughout Florida (the "Properties") that are under the "flags" of IHG, Marriot, Hilton, and Hyatt brands. As of the date hereof, the Debtors own and operate two (2) hotels in Florida.

7. On April 5, 2023, the Court entered an order [Docket No. 215] (the "Sale Procedures Order") approving, among other things, the proposed procedures and timeline governing the sale of the Debtors' assets, including the Properties, to the highest and best bidders, as well as certain milestones thereunder (the "Sale Process"). Under the Sale Procedures Order, the Debtors are authorized to conduct successive individual auctions with respect to the Properties—namely, the Group Properties, the Crowne Plaza, and the Daytona—on May 17, 2023, July 12, 2023, and August 4, 2023, respectively. *See also* D.I. 284. Certain of these dates subsequently were moved following conversations among the stakeholders. The Debtors' proposed investment banker, RobertDouglas ("RD"), was engaged to assist the Debtors in navigating the Sale Process. *See Application of the Debtors for Entry of an Order Authorizing the Retention and Employment of RobertDouglas as Investment Banker for the Debtors Effective as of the Petition Date* [Docket No. 141] (the "RD Application").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

3

8. RD originally entered into a co-brokerage agreement directly with Berkadia, whereby RD and Berkadia had agreed upon the services that Berkadia would provide and, as to compensation, agreed that any Advisory Fee (as set forth in paragraph 14 of the RD Application) received by RD would be allocated by RD two-thirds to RD and one-third to Berkadia. This arrangement was proposed in the RD Application and after consultation with the United States Trustee, it was agreed that that the total Advisory Fee would remain the same, but the Debtors would make the payments directly to RD and Berkadia, and Berkadia would file a separate Application.

9. Pursuant to the Court's orders approving the sales of the Properties [Docket Nos. 360, 361, 362, 363, 364, 537, & 544], all of the Properties have been sold to third-party buyers or to an affiliate of HPS Investment Partners, LLC, the administrative and collateral agent holding senior secured liens on all of the Properties (collectively, the "Property Sales"). Closings have occurred on six of the Properties, with two still to close as of the date of the filing of this Application.

10. The successful marketing of the Florida-based Properties required that the Debtors and RD be assisted by Berkadia, a licensed broker in the state of Florida, with multiple offices in central and south Florida. Berkadia's valuable local market knowledge, including information on recent comparable sales, combined with its local presence, helped maximize the value of the Debtors' estates.

**BERKADIA'S QUALIFICATIONS**

11. Berkadia is a full-service real estate firm formed in 2009 as a joint venture of Berkshire Hathaway and Leucadia National Corporation (now Jefferies Financial Group), both of which are renowned for their capital strength and sophisticated investment strategies. Berkadia

has extensive sales experience within the hospitality industry and is licensed in Florida, which was required to conduct the sales of the Properties.

12.     Berkadia, which has been engaged since the Petition Date,[3] provided a valuable addition and necessary complement to the professional services of RD.  Because Berkadia has a physical presence in Florida, it has a connection to the community and the types of buyers that were interested in the Debtors' Properties.  Berkadia's local presence also provided RD with the ability to accommodate requests for in-person property tours.

## SERVICES PROVIDED

13.     Subject to an order of the Court approving Berkadia's retention, the Debtors seek to retain and employ Berkadia for the necessary services rendered during the pendency of the Chapter 11 Cases.  The services rendered by Berkadia are appropriate and were necessary to enable the Debtors to faithfully execute their duties as debtors and debtors in possession and to prosecute the Chapter 11 Cases.  Berkadia's desire and willingness to act in the Chapter 11 Cases to render the below necessary professional services (collectively, the "Services") as broker for the Debtors was instrumental in the Property Sales:

- market and solicit proposals for the sale and/or Financing of the Properties located in Florida at RD's direction (to the extent permitted by applicable law);

- cooperate with RD who is a duly licensed real estate broker in the state of New York;

- perform all legally required duties of a real estate broker in the state of Florida;

---

[3] As set forth in the *Application of the Debtors for Entry of an Order Authorizing the Retention and Employment of RobertDouglas as Investment Banker for the Debtors Effective as of the Petition Date* [Docket No. 141] filed on March 3, 2023, the Debtors initially proposed that Berkadia would be retained under the umbrella of RD's retention. After discussions with the U.S. Trustee, the Debtors file this separate Application with respect to Berkadia.

- solicit proposals for a Sale and/or Financing of the Properties ("Proposals") which Proposals shall set forth, in writing, the terms and conditions for a potential Sale and/or Financing (each as defined in the RD Application) transaction;

- refer all press release requests relating to Properties to RD;

- collaborate with RD in the presentation and submission to the Owner of all offers for the Sale and/or Financing of the Properties;

- provide any other professional services necessary for provision of the foregoing Services.

**TERMS OF COMPENSATION**

14. In consideration of the services previously and to be provided by Berkadia, subject to Court approval, the Debtors have agreed that Berkadia shall earn the proposed compensation (the "Fee and Expense Structure") set forth below.

15. For purposes herein, the Fee and Expense Structure applicable for RD and Berkadia (for purposes of this section, together the "Brokers") consists of (i) a fee at one and one-eighth percent (1.125%) of the gross sale price or transaction value in the case of a Sale[4] (the "Equity Fee") or one and one-quarter percent (1.25%) of the gross financing amount in the case of a Financing (the "Financing Fee" and, together with the Equity Fee, the "Advisory Fee"); and (ii) hourly fees. The Advisory Fee shall be earned in full at the closing of such Sale and/or Financing of each Property, subject to the following: (1) In the event of either a Sale or Financing to a party other than the Secured Parties, the amount of the applicable Advisory Fee otherwise payable in excess of 0.75% of the total sale price or financing proceeds will be fully subordinated to the payment in full in cash of the Secured Parties' Claim (as set forth in paragraph 14 of the

---

[4] For purposes of this section, terms used but not defined shall carry those definitions assigned to them in the RD Application.

Final Cash Collateral Order [Docket No. 140]); and (2) In the event that one or more of the Secured Parties acquires the property by Sale through a credit bid, the amount of the Equity Fee otherwise payable to the Brokers in excess of 0.375% of the total sale price will be subordinated to the payment in full in cash of the Secured Parties' Claim. Any payment of hourly fees shall be subject to procedures for fee applications approved in these Chapter 11 Cases. Should the closing of a Sale or Financing not occur, then no Advisory Fee will be due to the Brokers. In no event shall the Brokers be entitled to both an Equity Fee and a Financing Fee for an individual Property.

16. In the event of a closing of a Sale or Financing, Berkadia shall receive one-third (1/3) of the Advisory Fee and RD shall receive two-thirds (2/3) of the Advisory Fee, which shall be paid to the Brokers by the Debtors.

17. The Fee and Expense Structure is the result of arm's-length negotiations between and among the Debtors and the Brokers. The Debtors ultimately agreed to the Fee and Expense Structure because it is reasonable and appropriate in light of market conditions and because the Debtors require the services of the Brokers. The Fee and Expense Structure also reflects the scope and difficulty of the mandate the Brokers have undertaken in connection with the Chapter 11 Cases and accounts for the potential for an unfavorable outcome as a result of factors outside of their control.

18. The Fee and Expense Structure was also agreed upon in anticipation that a substantial commitment of professional time and effort would be required of the Brokers and their professionals in connection with this assignment and in light of the fact that (i) such commitment may foreclose other opportunities for the Brokers and (ii) the actual time and commitment required of Berkadia and its professionals to perform its services may vary substantially from week to week and month to month during the pendency of these Chapter 11 Cases, creating "peak load" issues

for the Brokers. The ultimate benefit of Berkadia's services cannot be measured by reference to the number of hours to be expended by Berkadia professionals in the performance of such services.

## RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

19.  It is not the general practice of real estate firms, such as Berkadia, to maintain contemporaneous time records or to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2.  The Debtors understand that Berkadia intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in the Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders entered in the Chapter 11 Cases governing professional compensation and reimbursement for fees and expenses charged.  Such applications will include time records for Berkadia setting forth, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent in one-tenth of an hour increments by each such individual in rendering services on behalf of the Debtors.  The Debtors respectfully request, pursuant to Local Rule 2016-2(h), that the Court waive compliance with any such requirements inconsistent with the description set forth above.

20.  Berkadia will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

21.  Berkadia's applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the Proposed Order, in accordance with Local Rule 2016-2 and any procedures established by the Court.

**BERKADIA'S DISINTERESTEDNESS**

22. To the best of the Debtors' knowledge and following a diligent search, as set forth in the Stevenson Declaration, Berkadia (i) has no connection with the Debtors, their creditors, other parties in interest, the attorneys or accountants of any of the foregoing, or the U.S. Trustee; (ii) does not hold or represent any interest adverse to the Debtors' estates; and (iii) is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

23. Berkadia will review its files periodically during the pendency of its engagement in these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, Berkadia will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a) and Local Rule 2014-1.

**RELIEF REQUESTED**

24. By this Application, the Debtors seek entry of the Proposed Order, (i) authorizing the Debtors' retention and employment of Berkadia as the broker for the Debtors effective as of the Petition Date, in accordance with the terms and conditions set forth herein, and (ii) modifying the time keeping requirements, as necessary, under Bankruptcy Rule 2016(a) and Local Rule 2016-2.

**BASIS FOR RELIEF REQUESTED**

25. The Debtors seek approval of the retention and employment of Berkadia pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 327(a) of the Bankruptcy Code provides that a debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties. 11 U.S.C. § 327(a).

26. In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum (In re Nat'l Gypsum Co.)*:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted).

27. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code to read as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a). It is thus clear that debtors may retain a professional on a fixed or percentage fee basis with Court approval, such as the proposed Fee and Expense Structure.

28. As discussed above and in the Stevenson Declaration, Berkadia satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code. Berkadia has committed and will continue to commit a significant amount of time and effort assisting the Debtors with their sale efforts in Florida. The terms and conditions of the Application are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

29. Berkadia intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the Court's approval.

30. The Debtors submit that the retention of Berkadia is in the best interests of all parties in interest in the Chapter 11 Cases. As set forth above, Berkadia has extensive experience in matters involving real estate transactions and an excellent reputation for providing real estate services throughout the United States.

## NOTICE

31. Notice of this Application has been provided to: (i) the U.S. Trustee; (ii) counsel to HPS Investment Partners, LLC (as administrative and collateral agent); (iii) the Debtors' thirty largest unsecured creditors on a consolidated basis; and (iv) any party who has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

11

US.356895879.07

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: September 28, 2023

*/s/ Daniel Duggan*
Daniel Duggan
Chief Financial Officer

US.356895879.07